The opinion of the court was delivered by
Watkins, J.
Originally this suit had, for its object, recovery by Augusta L. Church, the alleged surviving widow of the deceased, the money and movable effects of which she was donee by the testamentary bequest; but the legal heirs of the deceased by a former marriage incorporated a reconventional demand and other issues in their answer; the same were made the subject of a subsequent direct attack on the claims and pretensions of the plaintiff, which she, in turn, put at issue by answer.
On these pleadings and issues there was a general judgment against the heirs, and in favor of the original plaintiff and donee; the heirs have appealed.
I.
The will of the deceased is of the following tenor, viz.:
“New Orleans, December 27, 1890.
“This is my olographic will — I give and bequeath to my wife Augusta L. Church, all the movable effects contained in our house, corner Bordeaux and St. Charles avenue, with the exception of the family paintings, which I give to my son Charles — he to divide them with his brother and sister. I also give and bequeath to my wife the sum of ten thousand dollars. The balance of my estate I bequeath to my children, share and share alike.
“I appoint as my executors my wife and my son Charles, they to have full charge of my estate without giving any bonds.
(Signed) “ J. Hernandez.”
The grounds on which the heirs attack the testamentary bequest in favor of the plaintiff are best stated in the language of their answer and reconventional demand, and in that of their petition, attacking plaintiff’s capacity to receive by will, and the legality of her *971 -title to a community half interest in the property left at the demise of the decedent.
The following is an extract from their answer, viz.:
“ That a final judgment was rendered and signed on the 4th of October, 1881, or about that time, in the suit entitled Joseph Hernandez vs. Rosema D’Aunoy, his wife, No 70 of the docket of the Twenty-fourth Judicial District Court for the parish of St. Bernard, in favor of the defendant in said suit; and, on her demand in reconvention therein against the said plaintiff, Joseph Hernandez, decreeing a separation from bed and board, and a final divorce a vinculo matrimonii, dissolving forever the bonds of matrimony existing between them; shown by a duly certified copy of said judgment, herewith filed and made a part of this answer, mailed Exhibit A.
“That the aforesaid judgment was rendered and the divorce therein granted allowed in favor of the said Rosema D’Aunoy, wife of said Joseph Hernandez, and against her said husband, on the ground of adultery.
“That the petitioner herein, now styling herself as Mistress Augusta Lodoiska Church, widow in community of Joseph Hernandez, deceased, but in times past styling herself as Mistress Ogden and as Mistress Ida Curtis, was the chief accomplice in adultery with the said Joseph Hernandez, and, at various times and places anterior to the rendition of the aforesaid judgment of divorce, had illicit sexual intercourse with the said Joseph Hernandez, viz., in 1879, 1880 and 1881, and in other years prior thereto, in the city of New York, at the St. James Hotel and elsewhere, and in the city of New Orleans, at the St. Charles Hotel and elsewhere, time and time again. That owing to the said judgment of divorce, granted as aforesaid, in favor of Mistress Bosema D’Aunoy, wife of said Joseph Hernandez, against her said husband, and on account of said petitioner’s complicity in adultery with said Joseph Hernandez, the said petitioner and the said Joseph Hernandez became forever legally incapable of contracting marriage with each other, and the so-called, marriage, relied on by petitioner, if ever contracted, which is herein specially denied, was, is, always has been and always will be absolutely null and void and without any lawful force or effect.
“ Further answering, these respondents say — that no community of acquets and gains ever existed between the said petitioner and the said Joseph Hernandez; that said petitioner never had any right, *972 title, interest or claim in or to any of the property, real, personal or mixed, appertaining or belonging to the estate of the late Joseph Hernandez; that the so-called legacy of ten thousand dollars, and the so-called legacy of the movable effects in the residence of the said Joseph Hernandez, at the corner of St. Charles avenue and Bordeaux street, in this city, claimed by petitioner in her aforesaid petition, were and are unlawful and without any force or effect, and should be so decreed and held by the judgment of this Honorable Court.
“ Respondents further answering show that immediately after the aforesaid judgment of divorce was rendered and executed, the said Joseph Hernandez had held and owned not less than two hundred thousand dollars ,($200,000) real and personal property; and at the date of his death in April, 1893, all that could then be found, and all that has since been discovered of his entire estate, will not equal in value the sum of one hundred thousand dollars ($100,000).
“ That from 1881 to April, 1893, the said Joseph Hernandez was living openly with the said petitioner, Mistress Augusta Lodoiska Church, as man and wife, notwithstanding the prohibition aforesaid, which inhibited them from living in that way and from ever contracting the marriage relationship.
“ That during the period aforesaid — that is since 1881 — a large portion of the estate of the said Joseph Hernandez has been illegally wasted and lavished upon the aforesaid petitioner, owing to her unlawful and undue influence over the said deceased, and the diminution of said estate has been largely occasioned by petitioner’s extravagant living, and by the many large and unlawful gifts and presents and transfers, which the said petitioner illegally obtained from the said Joseph Hernandez; that the so-called legacy of ten thousand dollars ($10,000), and the so-called legacy of the movables in the residence of the said deceased, claimed as aforesaid by petitioner, composes more than one-third of the entire estate oí said Joseph Hernandez so far discovered; that by law the said testator could not under any circumstances have lawfully given the said petitioner more than one-tenth part of the movables of his estate — which portion, and more, the said deceased had long before disposed of in favor of petitioner by gift, donation and otherwise.
“And these respondents further answering say — that for the foregoing and other reasons the said petitioner is not entitled to said so- *973 called legacies, or either of them, nor can she have possession or delivery of the same, as claimed in her petition or otherwise; that the gifts, transfers and donations made by the said Joseph Hernandez to petitioner, at various times, exceeded fifty thousand dollars, and more than exhausted his ability and power to give or bequeath anything to petitioner by his last will and testament. That all the provisions of said last will containing bequests in favor of petitioner should therefore be canceled and decreed and held illegal, null and void.
“And now reconvening and becoming plaintiffs in reconvention respondents pray for judgment on the original demand herein — in their favor and against petitioner; and upon the demand in reeonvention, appearers pray for judgment in their favor and against the said Mistress Augusta Lodoiska Church, illegally styling herself widow in community of the late Joseph Hernandez, for fifty thousand dollars ($50,000), or for so much thereof as will be shown on the trial of this cause to have-been illegally given, transferred or disposed of in favor of said petitioner by said Joseph Hernandez; and that all such unlawful gifts and transfers may be annulled — and re-convenor further prays for a judgment decreeing the alleged marriage between petitioner and the said Joseph Hernandez to be, and to have always been an absolute nullity, and without any legal force or effect.”
Several months subsequent to the filing of this answer the heirs filed a petition making a direct demand for the annulment of the legacy on the same averments of illegality of the marriage of the plaintiff with their father, and praying for a personal judgment against her for the sum of fifty thousand dollars, approximately.
As the language of this petition is somewhat more comprehensive than the answer of the heirs, and the charges against the plaintiff are somewhat more elaborated and intensified, we will reproduce the following extracts:
“Petitioners further show that the said judgment granting a divorce in favor of said Rosema D’Aunoy against her said husband, Joseph Hernandez, on the ground of his adultery and the complicity of the defendant herein in adultery with the said Joseph Hernandez, as aforesaid, constituted a fixed, absolute and perpetual barrier to any marriage between the said Joseph Hernandez and the defendant herein.”
*974 “That if any marriage was ever contracted between the said Joseph Hernandez and the defendant herein, which petitioners specially deny, said so-called marriage was entered into in bad faith on the part of said defendant, and in violation of. prohibitory laws, and was, is, always has been, and ever will be, absolutely null and void.
“ Petitioners further show that as there never was any legal marriage between the late Joseph Hernandez and the defendant herein, there was not, and never could have been, any community of acquets and gains between them, and said defendant has not and never has had, any community rights nor claims, whatsoever, in or to any of the assets or properties, real, personal or mixed, appertaining or belonging to the estate of the late Joseph Hernandez.”
In order to be explicit, we reproduce the prayer of the defendant’s petition:
“ Wherefore, petitioners pray that Mistress Augusta Lodoiska Ohureh, illegally claiming to be the widow in community of the late Joseph Hernandez, be cited to appear and answer this petition; and after due proceedings had, judgment be rendered in favor of petitioners, and against said defendant, decreeing said defendant never to have been the wife, nor the widow in community, or otherwise, of the late Joseph Hernandez — furthermore, annulling all bequests contained in the last will and testament of the late Joseph Hernandez, in favor of the said defendant, and ordering the entire estate of the late Joseph Hernandez to be distributed among his forced heirs, as their interests may appear, regardless of any bequests contained in said will in favor of said defendant. Furthermore, decreeing that all the movables and other properties inventoried in this estate be held and adjudged to have belonged exclusively to the said Joseph Hernandez and to his aforesaid surviving forced heirs, and condemning the said defendant to pay back to this estate fifty thousand dollars (|50,-000), or so much thereof as will be shown on the trial of this cause, to have been illegally given, transferred or disposed of by said Joseph Hernandez, to or in favor of said defendant, and that all such unlawful donations, gifts and transfers be annulled.
“ And if it be shown that the contract of marriage was ever solemnized between defendant and said Joseph Hernandez, then, and in that event, that judgment be rendered herein decreeing said mar *975 riage to have been always an absolute nullity, and without legal force or effect.”
In answer to these charges, the original plaintiff — the alleged surviving widow of Hernandez — “ avers that she was legally married to the late Joseph Hernandez on the 29th of December, 1881, in the city of New York, by the mayor of said city, and under the laws of that State; and that no impediment of any kind existed against said marz’iage, either at the time of its celebration or before.
“That the charges preferred, of complicity in adultery with the said Joseph Hernandez, are false and untrue, and no judgment to that effect was ever rendered, nor was respondent party to any proceeding in which said issue was asserted or maintained.
“ That the petitioners have ever since her marriage acknowledged the validity of the same, visited the common domicile daily, and have recognized respondent as the lawful wife of said Hernandez, and they are now estopped from denying the validity of said marriage.
“That respondent owned in her own name when she married the said Joseph Hernandez, property amounting to not less than twenty-five thousand dollars, consisting of money, jewelry, paintings, carriages, furniture, table and bed linen and household effects.
“ That petitioners are estopped from denying the truth and reality of the acts of purchase by respondent of the two pieces of immovable property situated in the parish of St. Tammany in this State, in which acts of purchase the said Joseph Hernandez acknowledged and declared that the price was paid with the paraphernal funds of your respondent.
“Wherefore, respondent prays that plaintiff’s demand be dismissed, with costs, and that there be judgment in favor of respondent, decreeing that she was lawfully married to Joseph Hernandez; that the legacy he made her in his last will is valid and legal and be paid to her; that she be recognized as entitled to half of the community property left by him, and that her paraphernal rights be recognized and decreed for such amount and specific effects and things as she may prove herself entitled to on the trial of this cause.”
These extended extracts from the pleadings best serve to characterize the controversies in this case and fix the mind of the Court on the questions that are to be solved by testimony — much of which is received over objection.
*976 II.
The foundation of the attack of the Hernandez heirs upon claims of the alleged surviving widow depend, primarily and mainly, upon •a proper construction of Art. 161 of the Revised Civil Code, the text of which is as follows, viz.:
“ In case of divorce on the ground of adultery, the guilty party can never contract matrimony with his or her accomplice in adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy; and under penalty of nullity of the new marriage.”
The contention of the heirs is that the denunciation of that article ■against the marriage of the guilty party with his or her accomplice in adultery is matter en pais to be determined by the administration of proof on the trial of a suit that involves the validity of the marriage ; while that of the plaintiff is, that it is against the marriage of the guilty party named in the divorce suit as an accomplice, or particeps criminis in fche adultery charged as the cause of the action, whether such accomplice be made a co-respondent or not.
Hence, upon the determination of the correctness of these contentions pro et con, depends the admissibility of the large volume of •evidence found in the record; and upon the construction of the cited article of the Oode mainly depends the legality of the marriage of Joseph Hernandez with plaintiff on the 29th of November, 1881.
The proofs principally relied upon by plaintiff are the following,. to-wit:
1. The last will of the late Joseph Hernandez.
2. The certificate of marriage, issued from the office of 'the mayor of New York, certifying that the ceremony between Mr. Joseph Hernandez and Mrs. Augusta L. Ogden, of Paris, France, was performed by the mayor of New York, on the 29th of December, 1881, .at his office in said city.
3. Volume 3 of the Revised Statutes of New York, seventh edition, title 1, Art. 1, paragraph 8, at p. 2332, for the purpose of showing the mayor’s authority to celebrate a marriage.
4. Her testimony to the effect that the Augusta L. Ogden, named in said marriage certificate, was the same person as herself.
“ The fundamental facts on which the forced heirs of the late Joseph Hernandez rely to overthrow the demands of Mrs. A. L. •Church for a delivery of her aforesaid legacy, and on which they *977 have sought and are still endeavoring to annul the same, and to have her aforesaid marriage decreed to be without any legal force or effect, are:
“ 1. The divorce granted Mrs. Rosema D’Aunoy, wife of Joseph Hernandez, by the District Oourt of the parish of St. Bernard, on the 4th of October, 1881, on the ground of adultery, and
“2. Complicity in adultery on the part of Augusta L. Church with said Joseph Hernandez, during his marriage with Rosema D’Aunoy.” Defendant’s brief, pp. 21, 22.”
In support of the foregoing charges, defendants made the following proofs, viz.:
First: The record, and pertinent facts therewith connected, in the suit entitled Joseph Hernandez vs. His Wife, No. 70 on the docket of the Twenty-fourth Judicial District Court, parish of St. Bernard.
(а) The aforesaid suit was directed against Rosema D’Aunoy as the wife of plaintiff, claiming a divorce a vinculo matrimonii on various grounds which it is needless to mention. The record of this suit was lost or destroyed by the fire which burnt the court house on the 2d of March, 1884, as is stated in the certificate of the clerk, appended to the copy of the minutes of the court — same alone surviving the fire.
(б) The testimony of the presiding judge and the lawyers engaged in the trial of the ease was taken with the view of establishing the purport of the pleadings, evidence, and judgment, pronounced therein.
The judge states his recollections to be that the defendant charged adultery on the part of her husband and asked judgment of divorce accordingly.
That several witnesses were examined, and that the charge of adultery on the part of the husband was fully established, but with what particular person he can not remember. But he further amplifies his statement, thus:
“ I have stated all I remember of this case in the above answer. I can not state whether the pleadings set forth the name of the person or persons with whom Hernandez was charged with having committed adultery. My impression is that the evidence established that he visited houses of Assignation, and committed adultery with prostitutes.”
The statement of the attorney who brought that suit is, that no *978 one was named as co-respondent, and no one was named or specified as the person or persons with whom the plaintiff had committed adultery, on the faith of which the defendant’s reconventional demand was made. That his recollection is that the evidence was not reduced to writing. He remembers that one witness stated, substantially, that he knew of two instances wherein Mr. Hernandez had committed adultery. He states positively that “no witness specified any particular person with whom Mr. Hernandez had committed adultery; and no one stated that he had committed adultery with one Mistress Augusta L. Ohurch, sometimes called Augusta Ogden, and sometimes called Augusta L. Curtis. To the best of his recollection, the name of Mistress Ohurch, Mistress Ogden, or Mistress Curtis was not mentioned on the trial.” That “he remembers no evidence introduced on the trial of the cause for divorce tending to show that Mr. Hernandez was guilty of adultery with his second wife, Mrs. A. L. Hernandez; nor anything in the judgment of divorce fixing the guilt of adultery upon the said Mistress A. L. Ohurch, now the widow of Joseph Hernandez.”
The testimony of a prominent lawyer, who was connected with the case, is best evidenced by the following, viz.:
“ Q. Were you present in the District Oourt of St. Bernard parish on the day when the case of Hernandez against his wife for a divorce was tried ?
“A. I was.
“ Q. Did you see at the time, or previously, the pleadings in that case?
“A. I did.
“ Q. Do you remember, at this date, who was the party named as the accomplice or guilty person in the adultery there charged by the wife against the husband?
“A. My memory is that there was no person named. My memory of the suit is that-it was a suit by Mr. Hernandez against his wife for a divorce, she reconvening and claiming a divorce from him, on the ground of adultery.
“Q,. I believe your memory is correct. You heard the evidence administered in support of the charge of adultery ?
“A. I did, sir.
“ Q. Do you remember the name of the witness who was examined?
*979 “ A. Yes; I do, sir.
“Q. What is it?
“A. L. E. Lemarie.
“ Q. Did he, or did he not, give any testimony implicating Mrs. Augusta L. Curtis, the present Mrs. Hernandez?
“A. None in the world, sir.”
The witness last named was placed upon the stand as a witness in this case, and his statement is in keeping with the testimony of the witness last quoted from.
“ Q. Have you no recollection of having mentioned any one, in your testimony that you gave on the trial of that cause?
“A. I don’t think I have. I don’t think the question was asked me.”
One of the attorneys who represented the defendant in the suit was examined as a witness, and produced and filed in evidence, in connection with his evidence, a copy of the defendant’s answer and reeonventional demand, which is of the following tenor, viz.:
“ Joseph Hernandez vs. His Wife.
“ No. 70. Twenty-fourth Judicial District Court, Parish
of St. Bernard.
“ The answer of defendant herein denies generally each and every allegation in the plaintiff’s petition contained, except the fact of marriage and community of property; and now, assuming the character of plaintiff in reconvention, she avers:
“ That her said husband, forgetting alike his vows and marriage with petitioner, did commit adultery with certain females, at various times and places in this city, since the 21st of April, 1880, the full particulars and specifications whereof have been served in writing upon defendant, and same are made part hereof, and that, by reason thereof and the law, your petitioner is entitled to a final divorce.
“ Wherefore she prays judgment in her favor on the demand of plaintiff, and in her favor on the reeonventional demand against her husband, Joseph Hernandez, decreeing a separation from bed and board, and final divorce a vinculo matrimonii, forever dissolving the bonds of matrimony now existing between them, that a separation of property be decreed, and that--notary public, be appointed to partition the community property, and she prays for all *980 such further aid, relief and remedy as the court is competent to give in the premises.
(Signed) “ W. S. Benedict and
“ E. North Oullom,
“ Attorneys.”
The counsel’s attention having been attracted to the phrase we have italicized, namely, “ the full particulars and specifications whereof having been served in writing upon the defendant and made a part hereof,” the following question was propounded and answer given, viz.:
“ Q,. In the copy of the answer that you have referred to in your testimony as having been filed in the case, mention is made of particulars and specifications served in writing upon the defendant, and made a part of that answer. Have you a copy of those specifications?
“ A. There were none filed.
“ Q. There were none?
“A. There were none filed with the answer?”
His remembrance of the facts detailed on the trial of that case is much the same as that- of other witnesses.
The exceptions filed related exclusively to the jurisdiction of the court, and same were overruled.
Notwithstanding the destruction by fire of the original records the minutes of the court, in that case, were fortunately preserved, and they contain the judgment of the court, regularly signed, and which is of the following tenor, to-wit:
Extract from the minutes of October 4, 1881.
“The court met this day pursuant to adjournment:
.“Present: the Hon. A. E. Livaudais, Judge.
“No. 70.
“Joseph Hernandez vs. Rosema D’Aunoy, Wife.
“The expert herein appointed, Edgar H. Farrar, this day appeared in open court and presented his report, which was ordered filed, and made a part of the record of this case, and this case being regularly fixed came up for trial on its merits.
“Present, A. G. Brice, attorney for plaintiff, and W. S. Benedict and E. North Oullom, of counsel for defendant.
*981 “When after hearing pleadings, evidence and counsel, and the report of the expert herein appointed, the court considering the law and the evidence to be in favor of defendant on the plaintiff’s demand, and in favor of the defendant on her reconventional demand and against the plaintiff; it is ordered, adjudged and decreed that there be judgment herein on plaintiff’s demand in favor of the defendant Rosema D’Aunoy, and against Joseph Hernandez, plaintiff, with costs, and it is
“ Further ordered, adjudged and decreed that on the reconventional demand there be judgment herein in favor of Rosema D’Aunoy, wife of Joseph Hernandez, and against the said Joseph Hernández, her husband, decreeing a separation from bed and board between the said parties, and a final divorce a vinculo matrimonii, forever dissolving the bonds of matrimony existing between them. It is further ordered, adjudged and decreed that the rights o'f the said Rosema D’Aunoy, wife of Joseph Hernandez, against her husband, Joseph Hernandez, resulting from the community of acquets and gains lately existing between them, be fixed and determined in the sum of fifty-five thousand dollars, and that in accordance therewith there be judgment in favor of Rosema D’Aunoy, wife of Joseph Hernandez, and against her said husband in said sum of fifty-five thousand dollars, with legal interest from date with all costs.
❖ * * * * * *
“ Judgment rendered and signed in open court, this fourth day of October, 1881.
(Signed) “A. E. Lxvaudais,
“ Judge 24th Judicial District Court of Louisiana.”
The foregoing résumé of the record and evidence in the divorce suit, fully and conclusively demonstrates, that the action was not grounded on any charge of adultery, in which the present plaintiff was alleged or shown to have been a participant, and on the plaintiff’s theory of the law she was not an accomplice in the adultery, of which the plaintiff in that case, was proven guilty, the purport of the defendant’s charge against her being:
“ That, owing to the judgment of divorce, granted as aforesaid in favor of Mrs. Rosema D’Aunoy, wife of said Joseph Hernandez, against her husband, and on account of said petitioner'1 s complicity in adultery with the said Joseph Hernandez, the said petitioner and the said Joseph Hernandez became f oreverflegally incapable of contracting *982 marriage with each other; and the so-called marriage relied on by petitioner, if ever contracted, which is herein specially denied, was, is, always has been, and always will be absolutely null and void, and without any lawful force or effect (Tr., p. 28). (The italics are •ours).”
At this stage of the proceedings, the defendants offered evidence .aMwnde, to prove that the plaintiff had committed adultery with Hernandez, at different times and places, for the purpose and with the object of establishing the fact, that, on their theory, she was his accomplice in adultery, in the sense and within the denunciation of the •Oode.
To this evidence counsel for the defendant objected, on the following grounds, viz.:
“ First, that no proof was admissible beyond the scope of the allegations, which claimed the nullity of the marriage exclusively on the ground, that the judgment in the divorce suit of Rosema D’Aunoy had established the adultery of Joseph Hernandez with Augusta L. Church; and
'■‘Secondly, that the prohibition of marriage between the guilty spouse and his accomplice in adultery, as provided for in Art. 161 of the Code, applies only to the accomplice decreed as such in a divorce suit, and on account of whose adultery with the guilty spouse the judgment of divorce is rendered.”
An attentive and careful consideration of the pleadings of the defendants, as a whole, does not disclose that the nullity of the marriage, is rested exclusively, on the finding of the court to the effect that Hernandez had been guilty of adultery with the plaintiff; consequently the first rule of exclusion urged is not good, and in this respect the ruling of the judge a quo was correct.
But the second ground for the exclusion of the evidence offered is serious, and requires careful consideration.
What is the meaning and significance of the words of the article, “In case of divorce on account of adultery, the guilty party can never contract marriage with his or her accomplice in adultery?”
Does it mean an accomplice in the particular adultery of which the guilty party is charged, and on which the suit for divorce is predicated and decided? or does it mean an accomplice in any adultery -with any one, antecedent to the institution of the divorce suit, re *983 gardless of whether she is the person named or contemplated in the suit or not?
The answer of plaintiff’s counsel to the foregoing query is found so well stated in their brief that we extract the most pertinent portion .as the best mode of presenting it.
It is as follows:
“We see that it is only in case of divorce that a subsequent marriage is prohibited between the guilty spouse and his accomplice. The prohibition does not apply if the first marriage was dissolved by death; the guilty spouse surviving could clearly marry his accomplice in adultery, inasmuch as no law forbids it, and penal statutes ■can not be extended by implication. We find this well explained in Merlin, Rep. de Jurisp., Yol. 10, p. 216, verbo Empéehment de Mariage. He gives there also the origin of this prohibition. It was taken from the Roman law by the Catholic church. The subsequent marriage with the accomplice was only prohibited when the adultery was committed under a promise of marriage.
“But says Merlin: £ The Civil Code is more severe; it provides, Art. 298, that: “ In the case of divorce on account of adultery, the guilty spouse can never marry his accomplice.” Thus, in order to ■create the prohibition, it is no more necessary that the promise of marriage should concur with the adultery. But, let us observe it well, this provision is limited to the case where the adultery has been followed by a divorce. There could be, therefore, no opposition to the marriage of a widow with a man with whom it would be pretended that she had lived in adultery during her marriage; such a proof would not be admissible.’ “(The italics are ours).” A comparison with the text of the Art. 298 of the Code Napoleon, proves the correctness of the foregoing quotation. In Locré’s commentary on the French Code, title “of divorce,” he says: “ That the wife, against whom the divorce has been ‘pronounced, for this cause ’— adultery — ‘ is incapable of contracting a new marriage.’ ” Locré, Vol. 5. p. 161.
“That the husband against whom the divorce has been pronounced, for cause of adultery, will not be incapable of contracting .a second marriage, if it is not with his concubine.” Id.
“The adulterous husband will never be able to marry afterward with his accomplice. He should not be able to find, by and *984 through the judgment which condemns him, a title and instrumentality to satisfy a guilty passion.” Id. p. 311, Sec. 38.
This author is in full accord with the views of other French commentators, who hold that the reason for the prohibition is that the guilty party should not be allowed to procure a divorce for the purpose of marrying his accomplice; or, in other words, the effect of the judgment releasing him from his marriage covenant ought not to be to furnish him immunity from his crime, by permitting him, afterward, to contract a new marriage with the partieeps eriminis in the adultery of which he has been convicted. Laurent, Vol. 2, p. 478, Sec. 367; Toullier, Vol. 1, p. 465; Duranton, Vol. 2, p. 124, Sec. 177; Demolombe, Vol. 3, pp. 165, 167; Marcadé, Vol. 1, p. 599.
By a comparison it will appear that the language of the Code Napoleon is almost identical with that of our Civil Code.
The Legislature of 1827 incorporated into the body of our law the rovisions of the Code Napoleon, in the following phraseology:
“That in cases of divorce'on account of adultery, the guilty party can never contract matrimony with his or her accomplice in the adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy and under the penalty of nullity of the new marriage.” Act relative to divorces, Sec. 10, p. 130.
This statute was re-enacted in 1855, without any other change or modification than the omission of the word “ the,” which occurs in the original text just before the word adultery. Act 307 of 1855, Sec. 8.
Counsel for the defendants refer to this omission from the act of 1855 — which is identical in terms with Art. 161 of the Code — of the article “the,” as significant of legislative purpose on the question, and they employ this language:
“ Be that as it may, the fact that when, in 1855, the present Art. 161 of our Code was adopted, the word “ the ” was omitted, shows beyond all doubt that if our Legislature in 1827 did intend to restrict the bar to marriage between the divorced spouse and his accomplice to any one accomplice, or any one set of accomplices, that it abandoned the policy, and, in its wisdom, made the law conform to the Code Napoleon, except in this, that while the French law is only mandatory, ours renders the marriage null.”
The question presented is apparently res nova in our jurisprudence *985 —no pertinent decision of this Court, or of the Court of Cassation, having been cited on either side.
True it is, that counsel for defendants have referred to and quoted from several cases, and notably the following, viz.: Dupré vs. Executor of Boulard, 10 An. 411; Succession of Minvielle, 15 An. 342; Summerlin vs. Livingston, 15 An. 520; Caballero’s Succession, 24 An. 573; Succession of Colwell, 34 An. 266. But all of those cases-treat of the nullity of marriages between white and colored persons,, which was prohibited by the terms of Art. 95 of the Code of 1825, which was expunged from the Revised Code of 1870, and, for the first time embodied the present Art. 161.
Therefore, those cases bear no analogy to the question under consideration.
But the Succession of Taylor, 39 An. 825, points in a direction opposite that of defendant’s view.
From the statement of the ease it appears that J. C. Taylor married Miss Sarah Castleberry in 1852, and in 1865 they voluntarily separated and thereafter lived apart. In 1866, Mrs. Sarah C. Taylor sued her husband for a divorce on the ground of adultery, but judgment went against her. In December of that year, Taylor and1 Widow McFarland were married in the State of Arkansas, and thereafter they lived and cohabited together. In 1867, Mrs. S. C. Taylor renewed her suit against Taylor for a divorce, grounding her demand upon the alleged adulterous life he was then leading with his pretended wife, under the Arkansas marriage ceremony, and in the month of November of that year, judgment was; rendered in her favor, granting her a full divorce against Taylor.
In the case under consideration, the children of the marriage of . Taylor and Widow McFarland sought to obtain a share in their father’s estate, and the children of the marriage of Taylor with Miss Castleberry resisted their claims, invoking the nullity of the marriage on the authority of Art. 161, Revised Code.
Of this controversy the Court said:
“ We conclude from the record that Mrs. McFarland’s conduct in marrying Taylor in Arkansas in December, 1866, was not characterized by good faith in law, and that in cohabiting with him thereafter she became his accomplice in adultery,” and therefore their marriage was void.
In that case the wife suing for and obtaining a judgment of divorce *986 •alleged that her husband had committed adultery with the identical person with whom he had been living; and the proof on the trial sustained the charge — hence she was, in the sense of Art. 161, his accomplice in the adultery. That case appears to confirm the theory of the plaintiff, though it possesses two features which distinguishes it from the instant case, and they are (1) that Taylor married Mrs. McFarland before he was divorced from his legal wife, while Hernandez was not married until after he was divorced from his first wife; and (2) that in the Taylor case the accomplice was named, though in the .Hernandez suit she was not.
Independent of the support which that decision brings to the plaintiff’s theory, the rule of our jurisprudence is that in a suit for •divorce grounded on a charge of adultery, the plaintiff must specially mention the person with whom the adultery has been committed, •and full particulars of time and place must be given, so as to put the •defendant on his guard, though it is not necessary that such person '.should be formally cited to answer as a co-respondent.
.As an illustration of that rule the following cases may be cited, namely: Compton vs. Compton, 9 An. 499; Souberville vs. Adams, 46 An. p. 119.
This precept of jurisprudence seems to have been followed in the Taylor case. 39 An. 825.
Not only is this theory in accord with correct rules of judicial procedure and pleading, but they comport with the principles of Art. 161 of the Code, which, manifestly, indicates the necessity of the accomplice being named and disclosed, as the means of enforcing its behests.
If this were not so, grave and serious injury might result; and the rights of inheritance, the legitimacy of children, and the security of marital rights, as well as the title to property, would be imperiled ■by the uncertainty and insecurity of the tenure, depending, as it would, upon the uncertain recollection of witnesses, long years after the occurrence had happened.
Who could be an accomplice of the guilty party other than the ■person with whom the adultery was committed ? To constitute the ^defendant in a divorce suit a “ guilty party,” the proof must show that he has committed adultery with some one; for, if the proof does not establish his guilt, the divorce can not be granted. If, indeed, the defendant had been engaged in promiscuous sexual intercourse *987 -with sundry persons, and these facts were not disclosed by proof on the trial of the divorce suit, he could not, in respect to such transactions, be considered a guilty party; and, consequently, the persons with whom such undisclosed adulteries had been committed could not possibly be deemed accomplices in the sense of the Code. For to be an accomplice, necessarily presupposes a principal, whose guilt has been established, and in whose guilt she is a particeps eriminis.
On mature reflection, and a careful examination of all the authorities bearing, on the question, we have reached the conclusion that the plaintiff’s second objection was well taken and should have been .sustained by the judge a quo, and the testimony that is covered by it, rejected and excluded.
The conclusion that necessarily results is, that Hernandez was under no legal disability to enter into a contract of marriage with the plaintiff, resulting as a consequence of the judgment of divorce; albeit, same was grounded on a charge of adultery — that is, if the marriage ceremony had been performed in the State of Louisiana.
We are therefore dispensed fiom making an examination of the previous divorce proceedings and the judgment of dismissal thereof, and the resulting effect of the estoppel and res adjudícala pleaded, as well as parol proof of adultery vel non between the plaintiff and Hernandez prior to the institution of the last suit for divorce.
III.
It remains for the court to consider the legal effect of the contract of marriage which the plaintiff entered into with Hernandez in the city and State of New York, and we are to determine whether the contracting parties-thereby came under the denunciation of the New York statute, which prohibits the second marriage of persons who have been divorced because of adultery during the lifetime of the former husband or wife.
The following is a literal copy of the New York marriage certificate, viz.:
“ State op New York,
“ Oity and County of New York.
“I, W. R. Grace, Mayor of the Oity of New York,
“ Do hereby certify,
■“ That on the 29th of December, 1881, at the Mayor’s, office, I duly performed the Marriage Ceremony between Mr. Joseph Hernandez, of New Orleans, La., and Mrs. Augusta L. Ogden, of Paris, France.
*988 “That the said parties were satisfactorily made known to me, and were of lawful age to contract marriage, and that' upon due inquiry by me made, there appeared no legal impediment to said marriage.
“ I further certify that the following persons, O. EL Woodman and O. G. Orocker, were present and became subscribing witnesses to said marriage.
“ [Seal affixed] (Signed) W. R. Grace, Mayor.”
The following is the section of the Revised Statutes of New York the prohibition of which the defendants’ counsel invoked, viz.:
“Section 5 of the Revised Statutes of New-York (Birdseye’s Edition), p. 1401, reads as follows:
“ ‘No second or other subsequent marriage shall be contracted by any person during the lifetime of any former husband or wife of such person, unless,
“ ‘ 1. The marriage with such former husband or wife shall have been annulled or dissolved for some cause other than the adultery of such person, or,
• “ ‘ 2. Unless such former husband and wife shall have been finally sentenced to imprisonment for life.
“ ‘ Every marriage contracted in violation of the provisions of this section shall, except in the case provided for in the next section, be absolutely void.’ ”
On this state of facts, defendants’ counsel contend that the terms of the New York statute include within its prohibition all persons divorced, whether under the law of Louisiana or that of New York, because of adultery, and render them incapacitated to enter into d contract of marriage in New York, notwithstanding they have their residence in Louisiana at the time; on the contrary, the contention of the plaintiff’s counsel is to the effect that the law of New York, being a penal statute, can have no extra-territorial effect, and therefore can not annul a contract of marriage between persons residing abroad, though solemnized in that State.
The question for this court to decide is, whether the plaintiff’s marriage celebrated in New York was valid, Hernandez having been divorced by a judgment of a Louisiana court because of adultery— his divorced wife still living.
' Not only does the marriage certificate show that Hernandez, at the time, resided in Louisiana, and Mrs. Augusta L. Ogden resided in Paris, Prance, but the testimony shows that immediately after hte *989 marriage ceremony the newly married couple came to New Orleans to live, and continuously thereafter resided, here as man and wife.
In the course of the argument of defendants’ counsel, they employ this language, viz.:
“ In Louisiana, however, while the general rule, that the validity of a marriage is to be determined by the lex loci contractus, is recognized, it has been held that where parties go abroad to evade our local statutes prohibiting their marriage the contract is null. Dupré vs. Executors of Boulard, 10 An. 411; Robin vs. LeBlanc, 12 An. 367; Maillefer vs. Saillot, 4 An. 375; Saul vs. His Creditors, 5 N. S. 569; Succession of Caballero, 24 An. 573; Parsons on Contracts, note on page 724, Sec. 575, Sixth Edition (commenting on Saul vs. His Oredtors).
“We do not understand the law of Louisiana to limit the general doctrine that the lex loci shall govern marriages as to the capacity of the parties in any other way than by declaring that this rule shall not govern its citizens when they are incapacitated by a local prohibitory law from contracting.”
That theory may be at once accepted; but it only goes to the extent that the marriage contracted abroad is intended to defeat the prohibition of a local statute. As this case stands now — with the prohibition of Art. 161 of the Code eliminated from the discussion— it is not the case of a marriage contracted abroad for the purpose of defeating the prohibition of a local statute.
In the present attitude of the case, the converse of that proposi-' tion is exhibited; and it is whether a marriage in New York of persons fully capacitated to contract marriage in Louisiana, where the marriage domicile is to be established, and where the husband has theretofore resided, will be declared a nullity by a Louisiana court, because a prohibition of a New York statute? ^
“ The law considers marriage in no other view than as a civil contract ” (R. C. C. 86, 90) ; and a general provision of our Code is that “ the effect of acts passed in one country to have effect in another country is'regulated by the laws of the country where such acts are to have effect.” R. O. O. 10.
We have frequently applied the precept of this last article to interstate contracts that were entered into in other States to be executed in Louisiana, notably in Gates vs. Gaither, 46 An. p. 286.
*990 The principle is well settled that the matrimonial rights of the wife, who marries with the intention of removing into another State, must be governed by the laws of her intended domicile. Ford’s, Curator vs. Ford, 2 N. S. 574; LeBreton vs. Nouchet, 3 M. 60; Fisher vs. Fisher, 2 An. 774.
In Hayden vs. Nutt, 4 An. 65, it was said that “it may be conceded that the defendant’s counsel is correct in assuming that the marital rights of these parties must be regulated by the laws of their matrimonial domicile.”
In Routh vs. Routh, 9 R. 224, it was held that “where the parties contracted marriage with the bona fide intention of making Louisiana the place of their common or matrimonial domicile, and in pursuance of such intention did, within a reasonable time, become domiciled in this State, then the property belonging to the wife before her marriage * * * remains her separate estate.” Conner’s Widow vs. Heirs of Conner, 10 An. 440.
In Arendel vs. Arendel, 10 An. 566, the facts were that at the time of the marriage in Alabama the spouses intended to fix their matrimonial domicile in Mississippi, which they accordingly did; and the court held that the right of the husband to slaves owned by the wife at the time of the marriage must be determined by the laws of Mississippi, and not those of Alabama.
In Ford vs. Ford, 2 N. S. 574, Judge Martin employed this expressive term, viz:
“ The wife does not contract where she enters into matrimony, but when she, after marriage, migrates or removes.

‘ ‘ Mulier non agit ubi matrimonium eontraxit, sed, ubi ex matrimonio migravit, vel divertit, agit. Cujas, ad l. 64, Exigere dotem, 164."

Or in other words, “ the place where marriage is contracted is not so much that where the ceremony is performed, as that where the parties expect to live and settle.” The general rule being “to attend to the law of the husband’s domicile rather than that of the place in which the contract was entered into.”
Not only is this so with respect to the wife’s rights of property, subsequently acquired, but it is equally so with respect to the contract of marriage itself. The rule is stated by Judge Story, thus:
“ The general principle certainly is, as we have already seen, that between persons sui juris, marriage is to be decided by the law of *991 the place where it is celebrated. If valid there it is valid everywhere.
“ It has a legal ubiquity of obligation.” Story on Conflict of Laws, Sec. 113; citing Ferguson on Marriage and Divorce.
But that author explains in a marginal note that “ the principle is established that the validity of a marriage — the word marriage being used in the sense of ceremony oí marriage — depends upon the-law of the place where the ceremony is performed. When the question is whether it is lawful for the two persons to be united in wedlock, there is a difference of opinion as to the law by which the validity of the marriage (the word being used to designate the union, in wedlock which the ceremony is intended to effect) is to be determined;” Sfory Oonf. Law, p. 188.
But the question immediately under consideration — that is, the> binding force of the contract of marriage in jurisdictions different, from the one in which it was celebrated — is distinctly settled conformably to the jurisprudence of this Court, the language of that author being as follows, viz.:
“ It is no answer to this reasoning to say that every nation has a. right, at its pleasure, to impose any restraints and prohibitions upon the marriages of its own subjects, whether they marry within or without its own territory. Admitting this to be true in the fullest extent to which it can justly be claimed, in virtue of national sovereignty, it must be quite as true, and quite as obvious, that no other nation is bound to recognize those restraints and those prohibitions as obligatory upon such subjects while they are domiciled within its own territory, or when they have contracted marriage there according to the laws thereof.”
The author again says:
“Personal disqualifications, not arising from the law of nature, but from the principles of a customary or positive law of a foreign country, and especially such as are of a penal nature, are not generally regarded in other countries where the like disqualifications do not exist.” Id., Sec. 104.
This doctrine was announced by the Supreme Court in The Antelope, 10 Wheaton, 66, employing the emphatic declaration, viz.:
“ The courts of no country execute the penal laws of another.”
And the New York Court of Appeals said, in Scoville vs. Caufield, 14 Johns. (N. Y.) 338, viz.:
*992 “ The penal acts of one State can have no operation in another 'state. They are strictly local, and affect nothing more than they (-can reach.” Story’s Con. of Laws, Sec. 621, p. 841.
There can be no question of the fact that the New York statute under consideration is a penal law, and that the attempt of the defendants is to have it enforced against the plaintiff by the courts of this State.
Mr. Wheaton puts the proposition thus:
“ I can not but think that both the history and policy of the law .require that the rule should be stated as follows:
* * * * * * *
“ Consensual marriages, abroad, by domiciled citizens of States holding such marriages valid, will not be invalidated because the forms prescribed in the State of celebration were not adopted,” etc. Wharton’s Con. of Laws, Sec. 170, p. 237.
That author again says:
“ A marriage abroad, it is alleged, would be a nullity if in fraud of the home law, but valid, if not in fraud of such law.” Id., Sec. 182, p. 264.
That author quotes approvingly the following extracts from Par-eons on Contracts, viz.:
“The rights, of parties as springing from the relation of marriage, must be determined by the place where they then supposed them.selves, aDd intended to be domiciled ” — citing LeBreton vs. Nouchet, 3d Martin (La.), 60; Ford vs. Ford, ut supra; Allen vs. Allen, 6 Robinson, 104; Wharton’s Con. of Laws, Sec. 190, p. 272.
Mr. Bishop puts the. proposition quite tersely, thus:
“ Statutes take effect only in the country of their enactment. They do not so much as bind citizens abroad, except by express words. Therefore a prohibition to- the guilty party in divorce to contract a ■second marriage is without effect outside of the territorial limits of the prohibiting State. And this is so even under special statutory ■terms.”
That author then illustrates by citing a Kentucky case, as follows:
“A Kentucky statute declared that the divorce for which it provided 1 shall not operate so as to release the offending party, who ■shall nevertheless remain subject to all the pains and penalties which the law prescribes against a marriage while a former husband or wife is living; ’ thereupon an offending woman, \Vhose husband has pro *993 cured the dissolution decree, removed to Tennessee, and there married, and the Tennessee court held the marriage to be good.” 2 Bishop Mar. and Div., See. 1618; Cox vs. Combs, 8 B. Munroe, 231; Roach vs. Garvin, Ves. Sen. 157.
In construing the statute of New York prohibiting second marriages of persons convicted of adultery, the Court of Appeals decided that the prohibition of the statute did not invalidate a second marriage entered into in Connecticut, where it was valid; the act being in the nature of a penalty, and not in express terms, showing the legislative intent to render such marriage entered into in another State, void. Van Voorhis vs. Brintnall, 86 N. Y. 18.
In Cropsy vs. Ogden, 11 New York, (1 Kernan) 228, the court gave an interpretation to the legislative act as it existed previous to the revision of the statutes of the State, with reference to the second marriage that was celebrated between citizens of that State, and by an officer of that State, and said:
“ The incapacity of an adulterer divorced on that ground by our own courts, to marry again in this State, during the life of the injured party, was grounded upon the views entertained by our Legislature in respect to the marriage relation.”
Thorp vs. Thorp, 90 N. Y. 602, announces the same principle as that announced in Van Voorhis vs. Brintnall, and affirms that decision.
In Moore vs. Hegeman, 92 N. Y. 521, a similar question is stated and discussed — the court stating that the main question which is presented upon this appeal is whether a marriage in New Jersey was legal and valid, or illegal, as in violation of the New York statute; and answering that proposition the court said: “The statute and decree prohibiting the marriage of the guilty party can have no effect beyond the territorial limits of the State. When the laws of another State do not prohibit such a marriage by a party divorced, the validity can not be questioned in this State.”
In our opinion, those decisions are strictly in keeping with our own jurisprudence, and the opinion of text writers on the subject. They distinctly hold that the prohibition of the New York law has no extra-territorial effect, and that a citizen of that State is at liberty to go into another State and contract a new marriage there, to which legal effect will be given by the courts of New York. That is no more than the plaintiff did. Residing in Paris, Prance, and Her *994 nandez residing in the State of Louisiana, they availed themselves of the law of New York and contracted marriage therein, intending to reside thereafter in Louisiana, and actually residing there, subsequently, it must be given the effect of a contract of marriage in Louisiana eo nomine; and thus considered, it comes within the principle of the decisions of the New York court.
A careful examination of authority has satisfied us that the plaintiff’s contract of marriage, though celebrated in the city and State of New York, was legal and valid, and did not come within the prohibition of the New York statute.
We see no reason to alter the decree of the court a qua.
Judgment affirmed.