OVERTON, J.
 

 Charles Knupfer, also known as Carl Knupfer, died intestate at his domicile in the city of New Orleans on April 28, 1930, leaving an «state worth something over $7,000. The public administrator, upon appointment made, qualified as administrator of his succession, and after provoking a sale of some of the property of the succession, filed a provisional account. Miss Pauline Knupfer, who is advanced in years, intervened in the succession claiming that she was the half-sister of the deceased and that she is his sole and only heir, and that, as such, she is entitled to the succession. The administrator, as well as the attorney appointed to represent the absent heirs, if any, put the intervention at issue. The right of the intervener to inherit is dependent upon the legitimacy of the deceased.
 

 Herman Knupfer married Eleonora Morgues, widow of John C. Biedenkopfer, on June 19, 1860. Of this marriage was born the intervener. Mrs. Knupfer, at the time of her marriage, had, as the issue of her prior marriage, a daughter, Maria Biedenkopfer. According to the belief of intervener, who was then a child about five or six years of age, resting upon statements, made to her by her mother, and strongly supported by surrounding circumstances, Maria and her stepfather, as the child grew to womanhood, became shockingly intimate. Mrs. Knupfer, on discovering the relations, concluded to surrender her husband, to the end that he might be free to marry Maria. Apparently, with this purpose in view, she employed a very reputable and well-known member of the bar, now deceased, to procure for her a divorce.' The intervener, who is the only known living witness, says that, when a child about five years old, her mother took her to the courthouse, when her mother went there to secure the divorce, and that, after the divorce was granted, Knupfer and Maria were married, although the marriage did not take place in her presence. Afterwards, Knupfer and Maria lived together as man and wife, and, so far as appears, were considered as such in the community in which they lived. Of this union the deceased was born on July 7, 1881. Two and a half years later, Knupfer registered the child before the recorder of births, on affidavit made by him, as his legitimate child and as the legitimate child of Maria Biedenkopfer.
 

 
 *1051
 
 We are satisfied, as was the trial judge, that the divorce was granted, and that Itnupfer and Maria were married soon after the divorce. It is urged, however, that the marriage, if performed, was null and without civil effect, as being in contravention of law, and therefore as legitimate relations do not inherit from illegitimate relations, intervener does not inherit from the deceased. The contention, as to the nullity of the marriage, rests on article 161 of the Civil Code, which reads as follows:
 

 “In case of divorce on account of adultery, the guilty party can never contract matrimony with his or her accomplice in adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy, and under the penalty of nullity of the new marriage.”
 

 This article is interpreted to mean that, although a party to a marriage may commit adultery and, after the dissolution of the marriage by divorce, marry the accomplice in adultery, yet, if the accomplice is not named in the proceedings or his identity does not appear in the evidence, the marriage) is nevertheless valid. In short, the article i§ applicable only to those cases where the name or identity of the accomplice appears in the record or in the evidence. Succession of Hernandez, 46 La. Ann. 962, 15 So. 461, 24 L. R. A. 831; Succession of Gabisso, 119 La. 794, 44 So. 438, 11 L. R. A. (N. S.) 1082, 121 Am. St. Rep. 529, 12 Ann. Cas. 574. The reason for the restriction is to establish a basis, which is certain, for the application of the penalty of the article rather than permit the application to rest upon the uncertainty of parol evidence given, perhaps, as is usually the case, after! the lips of one, or both, of the parties to the marriage are sealed by death, and at a time when motives of gain may induce falsehood, to say nothing of the desire not to unearth scandals, which, it may be, have long since been buried.
 

 The Succession of Damico, 155 La. 1636, 99 So. 862, is cited as stating a different rule from the foregoing. It is incorrect to cite that case as stating a different rule. It is true that in the Damico Case it was ruled that parol evidence should have been received to show that the accomplice, named in the petition for divorce, was one and the same person as the one that the guilty spouse later married. The effect of that ruling was not to enlarge the foregoing rule, but simply to afford means of identifying the accomplice, named in the divorce proceedings, since names do not always identify with certainty, for the accomplice and future spouse may bear the same name although they may be entirely different persons and they may bear different names and be the same person. The unbroken line of jurisprudence, including the Damico Case, therefore, shows that the name or identity of the accomplice must appear in the divorce proceedings or in the evidence to'render the article applicable.
 

 The divorce proceedings, in the case before us, cannot be found, although a diligent search has been made by both sides. The failure to find the proceedings, or any trace of them, may be attributed to the confused condition of the old records of the court and the indices to the same. It does not appear that any person now living ever read the petition, or knows from the proceedings had what ground was declared on for divorce. It is true that intervener, testifying against
 
 *1053
 
 her interest, says that the cause of the divorce was the relations between Knupfer and Maria, but she does not profess to know whether that ground was relied on for a divorce, and her tender age at the time of the divorce suit makes it most unlikely that she ever did know whether it was or not. It is not unlikely that Mrs. Knupfer found some other cause for divorce — .perhaps adultery committed by her husband with another — ■ and, in order to avoid a greater and far more shocking scandal, and at the same time to enable her husband to be free to marry her daughter, selected such other cause as the ground lor divorce.
 

 The trial court held that the deceased was the legitimate child of Knupfer and Maria, and sustained the intervention of Miss Knupfer, the succession to pay the costs.
 

 The judgment is affirmed, the succession to pay the costs of the appeal.