Lucille **KIMBALL**

v.

Marion B. **FOLSOM**, Secretary of Health, Education and Welfare.

Civ. A. No. 5677.

United States District Court
W. D. Louisiana, Alexandria Division.
April 18, 1957.

C. O. Brown, Alexandria, La., for plaintiff.

T. Fitzhugh Wilson, U. S. Atty., Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for defendant.

HUNTER, District Judge.

Lucille Kimball (claimant) seeks, as widow of Dave Kimball (wage earner), certain benefits under the Social Security Act. Her claims were denied[1] and there was a final administrative affirmance of the denial by the Appeals Council of the Social Security Administration. Plaintiff seeks a review of the denial. The matter is before this Court on a motion for summary judgment filed by defendant pursuant to Rule 56 of the Federal Rules, 28 U.S.C.A., and a certified transcript of the record made in the original proceedings.

This proceeding is, of course, not a trial "de novo", since the Act provides, Title 42 U.S.C.A. § 405(g):

"The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The Social Security Act directs the determination of the issues be governed by the Louisiana law of intestate succession[2].

The facts, insofar as shown, are simple:

"(a) Wage earner was married to Katherine Prothro in 1910. They separated in 1912 and were legally divorced in March of 1918. Katherine Prothro has been deceased for many years. The basis of her divorce against the wage earner was adultery on the part of wage earner with various women, and particularly with claimant.

"(b) Wage earner and claimant lived together in a common law relationship for several years[3], *and then on September 18, 1918 they were married. They lived together as man and wife for a period of 38 years thereafter, which period was terminated by the death of the wage earner on August 15, 1955.*

"(c) Wage earner was a lifelong colored resident of Central Louisiana. He could neither read nor write.[4] Claimant is a lifelong resident of Central Louisiana. She left school while in the second grade."

Projected against this factual background, we examine the law. Article 161 of the LSA–Civil Code provides:

"In case of divorce, on account of adultery, the guilty party can never contract matrimony with his or her accomplice in adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy, and under the penalty of nullity of the new marriage[5]."

---

1. The denial was based on a conclusion that she did not have the legal status of a wife under Louisiana standards, and was not in good faith under Louisiana standards.

2. 42 U.S.C.A. § 416(h):
   "In determining whether an applicant is the wife * * * widow, * * * child, or parent of a fully insured * * * individual for purposes of this subchapter, the Administrator shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, * *.

   Applicants who according to such law would have the same status relative to taking intestate personal property as a wife, * * * widow, * * *, child, or parent shall be deemed such."

3. This is a disputed factual issue. However, in view of the decision we have reached on other grounds, we deem it unnecessary to determine whether the finding is based on substantial evidence. We simply accept the referee's finding.

4. The claims representative of the Social Security Administration described him as "rather ignorant and somewhat senile."

5. Succession of Knupfer, 1932, 174 La. 1048, 142 So. 609, 610, the court said:
   "This article is interpreted to mean that, although a party to a marriage may

■ Applying his findings to the law, the Referee concluded, on March 14, 1956, that the marriage of September 18, 1918 was a nullity. We agree that this is so. But, a putative wife (one who was in good faith at the time she contracted the marriage) is entitled to the civil benefits flowing from such a marriage, and as such is entitled to inherit intestate personal property in Louisiana[6].

The question quickly narrows to one of good faith. Apparently, impressed by the totally inapplicable adage that "ignorance of the law is no excuse", and entertaining a fallacious belief that the burden of proving good faith was on claimant, the Referee concluded:

> "While the claimant stated she believed that she was legally free to marry the wage earner and that she was ignorant of the provisions of Article 161 of the Louisiana Civil Code, there is no evidence that she had been so advised by someone in a position to give such advice, and was not, therefore, able to show reasonable grounds for such belief that her marriage with the wage earner would be valid under the Louisiana law, and the Referee so finds."[7]

■ The Louisiana jurisprudence consistently holds that the burden of proving bad faith on the part of a marriage contractant rests squarely on the one making the charge. Any doubt as to the "good faith" of the parties must be resolved in favor of "good faith." The Referee clearly placed the burden on the marriage contractant to show "good faith." This was erroneous.[8] Then, too, with all deference to the conscientious counsel, I am of the firm opinion that the Referee was never made aware of the settled jurisprudence to the effect that the "good faith" necessary to cause a marriage which is null to produce the civil effects of a valid marriage may arise from an error of law as well as from an error of fact[9].

■ There is not a scintilla of evidence in the record, unless we are to resort to conjecture, to show that the claimant had any knowledge of the nullity of her marriage. She and the wage earner procured a marriage license, a ceremony was performed by a licensed minister, and they lived together as man and wife for 38 years. To assume that this uneducated colored woman was aware of Article 161 of the LSA–Civil Code, the provisions of which are peculiar to the State of Louisiana, is incredible. The evidence does not even show that she was aware that she had been named in the divorce petition. It must be borne in mind that the mar-

commit adultery and, after the dissolution of the marriage by divorce, marry the accomplice in adultery, yet, if the accomplice is not named in the proceedings or his identity does not appear in the evidence, the marriage is nevertheless valid. In short, the article is applicable only to the those cases where the name or identity of the accomplice appears in the record or in the evidence."

6. Article 117, LSA–Civil Code:
"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
Article 118, LSA–Civil Code:
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."

7. The inevitable result of this reasoning would trust upon claimant the necessity of consulting a lawyer or a judge as to the law.

8. Succession of Navarro, 24 La.Ann. 298; Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Marinoni, 183 La. 776, 164 So. 797; Succession of Chavis, 211 La. 313, 29 So.2d 860; Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502; Jones v. Squire, 137 La. 883, 69 So. 733; Succession of Pigg, 228 La. 799, 84 So. 2d 196.

9. Succession of Marinoni, 1936, 183 La. 776, 164 So. 797; Jones v. Squire, 1915, 137 La. 883, 69 So. 733; Chandler v. Hayden, 1925, 159 La. 5, 105 So. 80; Succession of Pigg, 228 La. 799, 84 So. 2d 196, 198.

riage contractants were colored, rural, uneducated, and respected citizens. The conclusion of the Referee that claimant was not in good faith is without legal support. The facts and circumstances are urgent and insistent to the contrary. It cannot stand and it is our duty to set it aside and reverse the decision. This we do.

Exhibiting striking factual identities in many respects with the present case is Pigg, supra. There, Pigg married his first wife in 1917. In 1929 she was committed to an insane asylum. In 1937, Mable Wright began living with Pigg in open concubinage. This relationship continued until April 28, 1945, when they were married. Prior to this marriage, Pigg had obtained from his first wife a clearly illegal divorce decree. Pigg died in 1947. The children of the first wife and her curator attacked the judgment of divorce as a nullity. The second wife conceded under the circumstances of the first wife's commitment to the insane asylum that the divorce decree was null, but contended that she was in good faith and able to inherit. The evidence revealed that when decedent began living with his second wife that she was fully aware that the first wife was in an insane asylum, and that he could not marry her unless and until he obtained a divorce. There was nothing in the record, however, to prove that she knew under the law and the circumstances that it was legally impossible for him to get a divorce. The district judge ruled that the second wife's testimony that she believed decedent could legally be married to her was not acceptable because she should have known that he could not legally obtain a divorce from his first wife while that wife was in an insane asylum. The district judge's opinion was also predicated in part upon statements attributed to Pigg which were purportedly made in the presence of his second wife that he could not marry while his first wife was confined in an insane asylum. The Supreme Court of Louisiana, in language applica-

ble here, had this to say in reversing the district court:

"We do not think that the inferences drawn by the judge are justified· by the evidence. The fact that defendant lived in concubinage with decedent or was not greatly concerned about her social status does not, of itself, make her unworthy of belief or provide a ground for holding that she was in bad faith when she contracted marriage with decedent. Nor is the circumstance that she might have believed that decedent could not have obtained a divorce from his first wife, as long as she was confined to an insane asylum, detract from defendant's good faith in view of the fact that a divorce was actually granted by a court of competent jurisdiction—in which judgment she was entitled to place reliance in the absence of personal knowledge that it was procured through fraud. The record is not only bare of any evidence indicating that defendant had knowledge that the judgment was obtained through misrepresentation, but proof produced by the defendant corroborates her statement that she was without any inkling of the grounds or the circumstances under which the divorce decree was secured.

\* \* \* \* \* \*

"So we observe here that to conclude, in the absence of evidence, that defendant knew or should have known that the divorce obtained by decedent was based on fraudulent grounds is to deal in the realm of conjecture and to supply an inference, founded on disbelief of a witness, in place of proof for the purpose of rebutting a presumption of good faith. This will not do. We hold that the record supports the view that defendant is a putative wife as defined by law and entitled to the civil effects of her marriage with Simmie E. Pigg."

Our appreciation of the law leaves us convinced that the record supports the view that Lucille Kimball is a putative wife under the laws of Louisiana and as such she is entitled to the civil effects of her marriage with Dave Kimball. Among those civil effects is the indisputable right to take intestate personal property.

It therefore follows that an order will be entered, reversing the decision of the Referee in this case.