84 So.2d 196

SUCCESSION of Simmie Eugene PIGG.

No. 40162.

Dec. 12, 1955.

Morgan, Baker & Skeels, Shreveport, for defendant-appellant.

A. C. David, Shreveport, for plaintiff-appellee.

McCALEB, Justice.

Mabel Wright Pigg, defendant herein, has prosecuted this appeal from a judgment denying recognition of her claim as putative wife of the late Simmie E. Pigg, with whom she was living at the time of his death on June 5, 1947 at his domicile in Shreveport, Louisiana. The salient facts of the case are not disputed and we find them to be as follows:

Decedent, Simmie E. Pigg, married Nona May Pigg on March 17, 1917 and of this marriage four children were born, who are plaintiffs herein. On June 19, 1929, Mrs. Pigg, having become mentally ill, was committed to the Central Louisiana State Hospital located at Pineville, Louisiana. She is still confined there and is represented herein by her curator, Charles Monroe Pigg, a brother of decedent, who, with decedent's children, is seeking to obtain the entire estate from defendant.

In 1937, defendant began living with the deceased in open concubinage, this relationship continuing until April 28, 1945, when the parties were married. Prior to the marriage, decedent had filed suit in the First Judicial District Court for the Parish of Caddo for a divorce from his first wife under the Two Year Separation Law, R.S. 9:301–9:303, in which he had a curator-ad-hoc appointed to represent her by falsely stating that her whereabouts were unknown, and, on November 2, 1944, secured a judgment by default founded on this substituted citation and service.

Plaintiffs claim that this judgment of divorce is null. Defendant takes no issue with that contention but maintains that she is a putative wife. Consequently, the only question presented for our determination is the correctness of the ruling of the trial judge that defendant was in bad faith at the time of her marriage to decedent and, therefore, did not acquire this status.

Article 117 of the Civil Code provides that a null marriage nevertheless produces civil effects " * * * if it has been contracted in good faith * *" and Article 118 declares "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor * * *". It is well settled that the good faith referred to in these Articles means an honest and reasonable belief that the marriage was a valid one at the time of its confection. Good faith is presumed and the burden of proving the contrary rests on the party who alleges it. Succession of Navarro, 24 La.Ann. 298; Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Marinoni, 183 La. 776, 164 So. 797; Succession of Chavis, 211 La. 313, 29 So.2d 860 and Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502. Furthermore, if there is any doubt on the issue, it is to be resolved in favor of good faith. Jones v. Squire, 137 La. 883, 69 So. 733 and Funderburk v. Funderburk, supra.

With these principles in mind, we address our attention to the facts of the case.

It appears from the evidence that, when the decedent began living with defendant, she was aware that his wife was in an insane asylum and that he could not marry her unless and until he obtained a divorce. Decedent's family, his children, mother and brother (the curator of the first Mrs. Pigg) were much concerned as to the social consequences resulting from this relationship and, while they did not outwardly disapprove of decedent and defendant living together as man and wife as they visited decedent's home frequently, they would on these occasions urge decedent to marry defendant. After the divorce and marriage none of these relatives suggested to defendant that the divorce was legally questionable or that decedent was not her lawful husband. Indeed, they, as well as other members of the community, considered them as husband and wife and treated them accordingly.

It is also clear that defendant, who was undoubtedly devoted and loyal to decedent, was satisfied with her station in life as his concubine and did not press upon him the matter of marriage. She simply says that they discussed the question between themselves many times and that decedent told her that he was going to get a divorce and marry her; that she had nothing whatever to do with the securing of the divorce and that, after he obtained it, she contracted marriage with him.

The district judge ruled defendant's testimony, that she believed decedent could

legally marry her, was not acceptable because she evidently knew that he could not obtain a valid divorce from his wife while she was in an insane asylum and that she was "not greatly concerned about her social status" having lived with decedent as his concubine for eight years. This opinion is also predicated in part upon statements attributed to decedent which were purportedly made in the presence of defendant, that he could not marry while his first wife was confined in an insane asylum and a critical appraisal of an assertion of defendant that she and decedent did not know that he could obtain a divorce but that later he found out that it was possible. From this, the judge draws the conclusion that defendant must, of necessity, have known that the divorce obtained by decedent was fraudulent.

We do not think that the inferences drawn by the judge are justified by the evidence. The fact that defendant lived in concubinage with decedent or was not greatly concerned about her social status does not, of itself, make her unworthy of belief or provide a ground for holding that she was in bad faith when she contracted marriage with decedent. Nor is the circumstance that she might have believed that decedent could not have obtained a divorce from his first wife, as long as she was confined to an insane asylum, detract from defendant's good faith in view of the fact that a divorce was actually granted by a court of competent jurisdiction—in

which judgment she was entitled to place reliance in the absence of personal knowledge that it was procured through fraud. The record is not only bare of any evidence indicating that defendant had knowledge that the judgment was obtained through misrepresentation, but proof produced by the defendant corroborates her statement that she was without any inkling of the grounds or the circumstances under which the divorce decree was secured.

In the strikingly similar case of Funderburk v. Funderburk, supra [214 La. 717, 38 So.2d 504], it was said:

"There is not a scintilla of evidence in the record, unless we are to resort to conjecture as suggested by counsel for defendant, to show that the plaintiff had any knowledge of the nullity of the purported divorce decree. To assume, as also suggested by counsel, that bad faith can be imputed to the plaintiff because on the face of the decree it shows it was rendered by the Twelfth Judicial District Court for the Parish of Avoyelles (a court which did not have jurisdiction of the parties), could only result in the further assumption that the plaintiff was well

versed in the law on this subject matter." (Words in parenthesis ours.)

So we observe here that to conclude, in the absence of evidence, that defendant knew or should have known that the divorce obtained by decedent was based on fraudulent grounds is to deal in the realm of conjecture and to supply an inference, founded on disbelief of a witness, in place of proof for the purpose of rebutting a presumption of good faith.[1] This will not do. We hold that the record supports the view that defendant is a putative wife as defined by law and entitled to the civil effects of her marriage with Simmie E. Pigg.

Since the trial judge, by reason of his ruling herein, did not pass upon defendant's rights as a putative wife, the case will be remanded to him for the purpose of determining the respective rights of the parties and making such disposition of the property of the estate as may seem meet.

The judgment appealed from is annulled and reversed and the case is remanded to the district court for further proceedings in accordance with law and consistent with the views herein expressed.

---

[1] It is the established jurisprudence that mere disbelief of a defendant's testimony cannot be considered as affirmative proof when none exists upon which a judgment for plaintiffs could be based. New Orleans & N. E. R. Co. v. Redmann, La. App., 28 So.2d 303; Pelican Well Tool & Supply Co. v. Sebastian, 212 La. 217, 31 So.2d 745 and Keller v. Summers, 192 La. 103, 187 So. 69. Cf. Ellis v. Kolb, La.App., 196 So. 89.