303 So.2d 891 (1974)
Edison L. KING
v.
E. A. CANCIENNE et al.
No. 9986.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
Writ Granted January 31, 1975.
*892 Sam J. D'Amico, Baton Rouge, for appellant.
Robert J. Vandaworker, Baton Rouge, for appellees.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
NEHRBASS, Judge.
This is a suit for damages sustained by plaintiff in an automobile accident involving a car owned by him which was being driven by his wife, Barbara King, and a car owned by E. A. Cancienne and driven by his then minor son, William P. Cancienne. Liberty Mutual Insurance Company was the automobile liability insurer of the Canciennes on the date of the accident.
The accident occurred on July 28, 1971, at the intersection of Dalrymple and East Lakeshore Drives in the City of Baton Rouge. Traffic at said intersection is controlled by an electric semaphore signal. Mrs. King, with the green signal, entered the intersection and was proceeding in a westerly direction on East Lakeshore Drive, at which time she was struck broadside by a violent blow from the defendants' vehicle which was proceeding North on Dalrymple Drive. Mrs. King was killed in this accident and plaintiff was severely injured. Plaintiff brought this action for his own personal injuries and for the wrongful death of his wife.
At the trial on this matter, over plaintiff's timely objection of expansion of the pleadings, defendants were allowed to introduce evidence concerning the purported invalidity of plaintiff's marriage to the decedent. After the trial defendants filed an exception of no right of action to plaintiff's claim for wrongful death, contending that there was no valid marriage between plaintiff and the woman killed in the accident because of her undissolved prior marriage. Plaintiff strongly objected to the filing of the exception of no right of action for reasons that will be discussed later.
In his written reason for judgment the trial judge found that the validity of plaintiff's marriage to the deceased was in issue and that the evidence submitted as to the validity of this marriage was not beyond the scope of the pleadings. The trial court also held that defendants had carried their burden in proving the invalidity of the marriage. The trial court found plaintiff to be in good faith and thus a putative spouse within the purview of Civil Code Articles 117 and 118; however, the defendants' exception of no right of action was sustained based upon Vaughan v. Dalton-Lard Lumber Company, 119 La. 61, 43 So. 926 (1907), which held that C.C. Art. 2315 did not create a right of action in favor of a putative spouse.
The trial court also held that the sole and proximate cause of the accident was the negligence of William P. Cancienne in failing to keep a proper lookout and in entering the intersection in flagrant disregard of the red light. The trial court further found that neither the plaintiff nor his deceased wife was guilty of contributory negligence. Accordingly, judgment was entered for the plaintiff and against the defendant awarding plaintiff damages for his personal injuries.
Plaintiff has appealed this judgment and avers that the trial court erred in allowing introduction of evidence which was beyond the scope of the pleadings and in sustaining the defendants' exception of no right of action. Plaintiff further avers that the *893 trial court erred as a matter of law in concluding that plaintiff could not recover for the wrongful death of his wife.
Defendants answered plaintiff's appeal seeking a reversal of the judgment on grounds that the trial court erred in finding defendant, William P. Cancienne, negligent and in failing to find plaintiff guilty of contributory negligence. In the alternative, defendant seeks a reduction in the quantum of damages awarded.
We first consider plaintiff's contention that the evidence introduced by the defendant concerning the invalidity of plaintiff's marriage amounted to an expansion of the pleadings. Plaintiff did timely object to the introduction of this evidence; however, we find that defendants had, in Paragraphs 4 and 11 of their answer, denied that the deceased woman was plaintiff's wife. Thus, the matter was in issue. Additionally, the pretrial order, signed by counsel for both parties, list "the validity of plaintiff's claim for the death of the driver" as a contested issue both of fact and of law. The inclusion of the wrongful death issue in the pretrial order would constitute consent by the parties to the trial of that issue, even if the answer had not raised the issue. Austrum v. City of Baton Rouge, 282 So.2d 434 (La.Sup.Ct.1973). Thus, we find that the evidence concerning the purported invalidity of plaintiff's marriage was properly allowed to be introduced.
Plaintiff maintains that defendants' exception of no right of action was not timely filed and thus cannot be considered. He cites as authority LSA-C.C.P. Art. 928, which states that a "peremptory exception may be pleaded at any stage of the proceedings in the trial court prior to a submission of the case for a decision." Plaintiff maintains that the case had been submitted for decision prior to the time that the exception of no right of action was filed.
The minutes of the court reflect that the matter was to be "submitted to the court on briefs to be filed by counsel." The record does not show when the post-trial briefs were filed and we have no way of determining whether or not the case had been submitted for decision; however, the trial court specifically held that the exception was timely filed, and we must assume that the trial court was aware of C.C.P. Art. 928.
Further, we are of the opinion that the timeliness of the exception, or even the absence of an exception, is of no moment in this particular case. We have held above that the introduction of evidence concerning the validity of plaintiff's marriage to the deceased was properly allowed. The matter was in issue. The trial court and this court have the power to notice the want of interest in the plaintiff to file this wrongful death action, even if no exception had been filed. LSA-C.C.P. Art. 927. We are compelled to apply the law to the case and if the evidence reveals that the plaintiff has no right of action we must so notice. Consequently, if the defendants' exception was not timely filed we must find that any error in considering this exception was not prejudicial to the plaintiff.
Plaintiff next contends that the trial court may not pursue the record to see if any of the evidence submitted on the trial will substantiate an exception filed after trial. We believe our prior discussion disposes of this contention; however, in passing we note that the authority cited by plaintiff is inapposite. Both Stacy v. Midstates Oil Corporation, 214 La. 173, 36 So. 2d 714 (1947), and Crisp v. Instantwhip New Orleans, Inc., 196 So.2d 612 (La.App. 4th Cir. 1967), deal with an exception of no cause of action to which no evidence may be introduced. We have reviewed Ladas v. Savage, 284 So.2d 852 (La.App. 4th Cir. 1973), cited by plaintiff, and find that it is not applicable to this case.
Plaintiff maintains that defendants have not carried their burden of proving the invalidity of plaintiff's marriage. *894 Plaintiff correctly asserts that there is a presumption that the second marriage is valid; however, we believe the defendants have plainly borne their burden of proof. On the trial defendants introduced into evidence a deposition of the plaintiff and the deposition of James Louis Holland, both subject to plaintiff's objection as to hearsay testimony. Also in evidence are two marriage certificates. From these we find that on February 22, 1971, the deceased, using the name of Pearl Elizabeth Hanks, married James Louis Holland in Orange, Texas, and thereafter lived with him in Lake Charles, Louisiana until June 15, 1971. On July 14, 1971, just two weeks prior to the occurrence of the subject accident, the deceased, using the name of Barbara Elizabeth Livingston, married the plaintiff in Orange, Texas. Mr. Holland states in his deposition that he and his wife were never divorced. There is no question as to identity of the woman, as Mr. Holland identified her as his wife and recovered his wife's body which he subsequently buried in the family cemetery. In the absence of any showing by plaintiff that the decedent's marriage to Mr. Holland was terminated prior to her marriage to plaintiff, we must hold that the marriage between plaintiff and decedent was invalid.
Defendant asserts that the trial court erred in finding defendant William P. Cancienne negligent and in failing to find plaintiff guilty of contributory negligence. We have reviewed the evidence and find that the trial court's holding in this regard is eminently correct.
We now come to the central issue in this case, whether or not plaintiff, as a putative spouse, may recover under C.C. Art. 2315 for the wrongful death of his wife.
In denying plaintiff's rights to recover for the wrongful death of his wife the trial court reluctantly followed the holding of Vaughan v. Dalton-Lard Lumber Company, 119 La. 61, 43 So. 926 (1907), which held that Article 2315 did not create a right of action in favor of a putative spouse and that the right to bring a wrongful death action is not a civil effect of marriage. In the Vaughan case the court used the following reasoning:
"The right to institute these statutory actions (Articles 2315) does not arise until the marriage has been dissolved by death, and it is therefore, not the result of the contract of marriage. Hence the contention that plaintiff's right to sue springs from the putative marriage as one of its civil effects is not well founded.
The rights of the putative wife are exceptional, and she has none beyond those specially granted." 43 So. at 928.
The trial court felt constrained to follow the Vaughan decision, however, in a very well written opinion attempted to show the error of its rational that the rights of a putative spouse are only those "specially granted". The court reviewed the extensive jurisprudence which has accorded the putative spouse many rights which cannot be said to be specially granted.
In Ray v. Knox, 164 La. 193, 113 So. 814 (1927) and in Succession of Pigg, 228 La. 799, 84 So.2d 196 (1955), the court upheld the inheritance and community property rights of the putative spouse. In Farrell v. Farrell, 275 So.2d 489 (La.App. 1st Cir. 1973), the court held that the right to child support is a civil effect of a putative marriage. In Jones v. Powell Lumber Company, 156 La. 767, 101 So. 135 (1924), the court upheld the right of the putative spouse to recover under the workmen's compensation statute for the death of an employee. See also "The Putative Marriage Doctrine in Louisiana," 12 Loy.L. Rev. 89, and the authority cited therein, in which the author summarizes rights accorded a putative spouse.
In support of its belief that the Vaughan decision failed to give proper effect to R. C.C. Arts. 117 and 118, the trial court cited *895 the case of Smith v. Smith, 43 La.Ann. 1140, 10 So. 248 (1891), which long ago properly construed Arts. 117 and 118:
"The Code provides ... that the putative marriage produces its `civil effects' as it relates to parties in good faith. The words `civil effects' are used without restriction, and necessarily embrace all civil effects given to marriage by the law; or, in the language of Marcade in commenting on the identical article in the French Code, such a marriage, "although actually null, has the same effect as if it were not null,the ordinary effects of a valid marriage." 10 So. at 250
In Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947), the Supreme Court again recognized that the civil effects of the putative marriage render it equivalent to a valid marriage. The court stated:
"If in fact Onelia Chavis married Alvin Chavis in an honest and reasonable belief that the marriage was valid and that no legal impediment existed, then in such case it would appear that all her civil rights and those of her children born of that marriage will be preserved just as though there had been in fact no legal impediment to their marriage." 29 So.2d at 862.
The trial court was of the opinion that to deny a putative spouse a right of action for the wrongful death of his spouse constitutes an unconstitutional denial of the equal protection of the laws. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed. 2d 436 (1968); Glona v. American Guarantee & Liability Insurance Company, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).
We quote portions of the trial court's well reasoned written reasons for judgment which we adopt as our own as follows:
"In Levy the Supreme Court found that there was no rational basis for the distinction between legitimates and illegitimates which Louisiana courts had drawn under Art. 2315. The court observed:
`The rights asserted here involve the intimate, familial relationship between a child and his own mother. When the child's claim of damage for loss of his mother is in issue, why, in terms of "equal protection," should the tortfeasors go free merely because the child is illegitimate? Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?
Legitimacy or illegitimacy of birth has no relation in the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would.
We conclude that it is invidious to discriminate against them when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother.' 88 S.Ct. at 1511.
"The same reasoning is applicable to the situation of the putative spouse. There is certainly a strong, intimate, familial relationship between putative spouses, a relationship commonly involving substantial dependency. The putative marriage imposes significant mutual duties and responsibilities upon the parties.
Why should a tortfeasor not be required to compensate a putative spouse for the real injury he has inflicted merely because there was an unknown impediment to the validity of his victim's marriage? Why should a putative spouse be denied a remedy for his injury because of a fact that is *896 not possibly relevant to the harm done to his spouse?"
Under the Vaughan interpretation of Article 2315 a putative spouse is absolutely barred from any wrongful death recovery. Hence, the rational of Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971) and Stokes v. Aetna Casualty and Surety Company, 257 La. 424, 242 So.2d 567 (1970), is not applicable here. In Labine, the Supreme Court held that Levy did not require the invalidation of Louisiana succession law's discrimination between acknowledged illegitimate children and legitimate children. The court stressed that in Levy the deprived class was inalterably barred from any recovery for the tort in question, while in Labine there was no such insurmountable barrier because, by complying with certain formalities, the illegitimate parent could make his natural child an heir.
In Stokes, the Louisiana Supreme Court upheld the provisions of the workmen's compensation law which relegate unacknowledged illegitimates to an inferior recovery priority. In this case the court was faced with a Levy based equal protection challenge and based upon the Labine rationale the court held that the workmen's compensation statute did not utterly deny the complaining class a right of recovery but just gave it a less protected position compared to the favored class of plaintiff's.
We know of no compelling rational basis for discriminating between legal and putative spouses with respect to wrongful death actions. To deny any recovery to a putative spouses promotes no interest of the state or society and permits a tortfeasor to escape liability for a serious wrong on the basis of circumstances totally unrelated to the tortious act and over which the putative spouse had no control. These consequences cannot reasonably be justified by the technical invalidity of a good faith marriage. If the court in Vaughan was concerned about the possibility of double recoveries in situations involving both a legal and a putative spouse, it is submitted, that there are more equitable ways in which to reconcile these conflicts between a legal and a putative spouse other than to arbitrarily deny the claim of a putative spouse.
In spite of these views, the court recognizes its obligation to follow the unequivocal jurisprudence of this state. Vaughan v. Dalton-Lard Lumber Company, supra. Accordingly, this court affirms the trial court's decision denying plaintiff recovery for the wrongful death of his wife under Article 2315. Perhaps, the Supreme Court will find in this case an opportunity to review its holding in Vaughan which denies the plaintiff full recovery for the losses he has sustained.
The defendant asserts that the trial court's award of $12,500.00 for plaintiff's injuries is excessive. The record reveals that plaintiff sustained multiple injuries in the accident of July 28, 1971, consisting of contusions to the left lower chest and upper abdomen, fractures to the left eighth rib, contusions to the left kidney resulting in a bloody discharge and contusions of the left lung. Additionally, plaintiff sustained a ruptured spleen and its surgical removal was necessary. Plaintiff developed a very painful infection to his surgical incision. His post operative recovery was described as "stormy". He was discharged from the hospital on August 11, 1971, then spent a week and a half in a convalescent home and was completely disabled from four to six months as a result of these injuries.
The trial judge had the opportunity to observe the plaintiff and determine the extent of his injuries, suffering and disability. We have reviewed the record and the quantum awarded plaintiff and we are convinced that there has been no abuse of discretion here. Accordingly, we affirm the trial court as to the quantum of damages awarded.
*897 For the foregoing reasons the judgment of the trial court is affirmed.
All costs of court are to be borne by defendants.
Affirmed.