[Civ. No. 63806. Second Dist., Div. Three. Dec. 23, 1982.]

In re the Marriage of EVE LYNN and RALPH W. RECKNOR.
EVE LYNN RECKNOR, Respondent, v.
RALPH W. RECKNOR, Appellant.

**COUNSEL**

Harris & MacAuley, John F. Harris and Terry A. Marcellus for Appellant.

Esensten & Elias and Emilie H. Elias for Respondent.

**OPINION**

**DANIELSON, J.**—Ralph W. Recknor has appealed from an order that he pay Eve Lynn Recknor spousal support pendente lite and pay her attorney fees.

### FACTS

Eve Lynn Recknor was formerly married to Gerard Cautero. On May 4, 1965, a complaint for divorce was filed in Los Angeles by Eve Lynn Cautero against Gerard Cautero, on the ground of extreme cruelty.

Eve and Ralph Recknor were married on May 19, 1965.

On October 4, 1965, an interlocutory judgment was entered in the Cautero divorce action.

On July 6, 1966, the Cautero divorce became final.

On November 26, 1980, Eve Lynn petitioned for dissolution of her marriage to Ralph W. Recknor. She requested custody of their two children, child support, spousal support, and attorney fees.

On March 30, 1981, Ralph filed an "amended response" and requested dissolution on the ground of irreconcilable differences and a declaration of nullity of the marriage. The nullity was requested on the ground that the marriage was void because on the date of marriage, neither the interlocutory nor the final decree had been entered dissolving Eve's prior marriage, and on the ground that the marriage was voidable because of a prior existing marriage.

On April 2, 1981, a hearing was held on the issues of spousal support and attorney fees. The evidence was in conflict as to whether Ralph knew of Eve's preexisting marriage before their wedding.

Ralph testified at the hearing that he had gone through a formal wedding ceremony with Eve on May 19, 1965, but that he had not known about the prior marriage before he and Eve got married. He said that he found out from a third party, about a year after the wedding. He admitted, however, that after he found out that Eve's prior marriage had not been dissolved, he continued to live with Eve and fathered another child.

Eve testified that he did know about the prior marriage, as follows:

"THE WITNESS: Number One, I was pregnant. I told . . . [Ralph] that I was married, and I said—well, he wanted to go through with a marriage ceremony.

"THE COURT: How did he know you were married?

"THE WITNESS: Because I told him that I was married; and when he said, 'I want to have a marriage ceremony before the baby was born,' I said, 'I don't want to go through the ceremony, because it is not legal.'

" 'It doesn't mean anything. I am married.'

"He said, 'I will feel better if you do.'

"I said, 'It doesn't mean anything. I don't want to do it.'

"He said, 'Just do it, because it will make me feel better.'

"Q. BY MR. ESENSTEN [attorney for Eve]: In relationship to the date of marriage of May 1965, when did that conversation take place?

"A. The conversation about the marriage ceremony?

"Q. Yes.

"A. Well, I am sure it took place a couple of months prior to that, because we went back and forth on it, and I kept saying, I didn't want to do it."

At the time of the wedding ceremony, Eve and Ralph had been living together for about six months. When she had discovered that she was pregnant, Ralph had had a marriage announcement printed, dated January 1 or 2, 1965.

However, Eve also testified that she knew that the marriage to Ralph was not valid.

In a declaration which she filed in connection with the motion, Eve stated that Ralph had known of her prior existing marriage when their wedding took place, but had promised to go through another ceremony after the divorce was final, and had later assured her, after the divorce for the prior marriage was final, that they did not need to get married again because he considered that they were married anyway, and that he would treat their marriage as valid. However, this declaration appears to have been ordered stricken when the court made its order on the matter.

On April 20, 1981, the court ordered Ralph to pay monthly spousal support pendente lite, and attorney's fees, citing in its minute order, *Spellens* v. *Spellens* (1957) 49 Cal.2d 210 [317 P.2d 613], and *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 683 [134 Cal.Rptr. 815, 557 P.2d 106].

On May 20, 1981, Ralph's motion for reconsideration was denied.

### DISCUSSION

■ It is contended by appellant that Civil Code sections 4455 and 4456 preclude the award of support and attorney fees to Eve on an estoppel theory, because she admitted that she knew that she was not free to marry. We agree that Eve is not a "putative spouse," but we find that she can properly receive support and attorney fees, as in an ordinary dissolution proceeding, because Ralph was estopped to deny the validity of their marriage.

We shall first set forth some of the statutory framework for void and voidable marriages and for awards of temporary support and attorney fees.

Civil Code section 4401[1] provides, in relevant part, as follows: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless:

"(1) The former marriage has been dissolved or declared a nullity prior to the date of the subsequent marriage."

Section 4425 provides, in relevant part, as follows: "A marriage is voidable and may be adjudged a nullity if any of the following conditions existed at the time of the marriage:

". . . . . . . . . . . . . . . . . . . . . . .

"(d) The consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife."

Section 4426 provides, in relevant part, as follows: "A proceeding to obtain a judgment of nullity of marriage, for causes set forth in Section 4425, must be commenced within the periods and by the parties, as follows:

". . . . . . . . . . . . . . . . . . . . . . .

"(d) For causes mentioned in subdivision (d): by the party injured, within four years after the discovery of the facts constituting the fraud."

Section 4455 provides as follows: "The court may, during the pendency of a proceeding to have a marriage adjudged a nullity or upon judgment, order a party to pay for the support of the other party in the same manner as if the marriage had not been void or voidable, provided that the party for whose benefit the order is made is found to be a putative spouse."

A definition of putative spouse is found in section 4452: "Whenever a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall declare such party or parties to have the status of a putative spouse, . . . ."

---

[1] References hereafter are to sections of the Civil Code unless otherwise noted.

Section 4456 provides as follows: "The court may grant attorney's fees and costs in accordance with Section 4370 in proceedings to have the marriage adjudged void and in those proceedings based upon voidable marriage in which the party applying for attorney's fees and costs is found to be innocent of fraud or wrongdoing in inducing or entering into the marriage, and free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage for which a judgment of nullity is sought."

Section 4370 provided, in 1981, for payment of attorney fees in family law proceedings, as follows: "(a) During the pendency of any proceeding under this part, the court may order the husband or wife, or father or mother, as the case may be, to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees; . . . ." (Stats. 1979, ch. 1030, § 2.)

■ The status of "putative spouse" requires innocence or good faith belief. "An innocent participant who has duly solemnized a matrimonial union which is void because of some legal infirmity acquires the status of putative spouse." (*Estate of Vargas* (1974) 36 Cal.App.3d 714, 717 [111 Cal.Rptr. 779, 81 A.L.R.3d 1].)

■ A finding that one or both parties to a void or voidable marriage entered the marriage in good faith may be deemed to be implied by the trial court's judgment. (See *In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533, 539-540 [156 Cal.Rptr. 556].) However, there could be no such finding of good faith in this case, conferring the status of putative spouse, because Eve knew that her final judgment of divorce had not been entered, and of its effect. Thus, Eve could not receive support under sections 4455 or 4456.

However, the award may be upheld on the independent, equitable ground of estoppel.

In *Spellens* v. *Spellens, supra,* 49 Cal.2d 210, 222, the court expressly rejected the "putative spouse" doctrine as the basis for its holding and used instead the theory of equitable estoppel to uphold an award of temporary support. The court held that when the husband is estopped to deny the validity of the marriage, the wife need not also obtain status as a putative spouse.

In *Spellens* v. *Spellens,* the facts were as follows: While Annelen was unhappily married to Robert, Sol Spellens said that he wanted to marry her and promised to take care of her if she would. Annelen finally decided to marry Sol, and she sought a divorce from Robert. After the interlocutory judgment, but before the final judgment, she married Sol in Mexico, on Sol's representation that the marriage would be valid. About a year later, Sol left, saying that the

marriage was not valid. Annelen filed an action to have the marriage declared valid, asking that Sol be estopped to question its validity, or that she be awarded damages for fraud, and that she be declared a putative spouse. Sol asserted that their marriage was void. (*Id.*, at pp. 213-216.)

The trial court found that the marriage was invalid and that no estoppel could exist, but that Annelen was Sol's putative spouse. (*Id.*, at p. 216.) Annelen sought support and attorney fees pendente lite, but they were denied because no marriage had existed. (*Id.*, at p. 217.)

In *Spellens*, our Supreme Court reviewed the case law on estoppel in marital cases. The court noted that estoppel to deny the validity of a divorce decree exists where the party denying validity procured the decree, or remarried in reliance on the decree, or aided the other party in procuring the decree so that the latter would be free to marry. (*Id.*, at pp. 217-218, citing *Rediker* v. *Rediker* (1950) 35 Cal.2d 796, 805 [220 P.2d 1, 20 A.L.R.2d 1152].)

In *Dietrich* v. *Dietrich* (1953) 41 Cal.2d 497, 505 [261 P.2d 269], the court held that a husband could not show the invalidity of the ceremonial marriage because he was estopped to assert the invalidity of wife's prior Nevada divorce decree. Husband had known of the circumstances of the Nevada decree, had nevertheless gone through a ceremonial marriage to wife, and had lived with her as man and wife for many years. The public policy of this state was held to require recognition of the second marriage, rather than the "dubious attempt to resurrect the original" marriage. (*Id.*, at p. 505, quoting *Rediker* v. *Rediker, supra*, 35 Cal.2d at p. 808.)

In *Harlan* v. *Harlan* (1945) 70 Cal.App.2d 657, 663-664 [161 P.2d 490], the court had noted that to hold that the second spouse was not estopped would be an invitation to have that spouse cohabit and then, when tired of the situation, apply to the courts to have the marriage declared void. (See *Spellens* v. *Spellens, supra*, 49 Cal.2d at p. 219.)

After thus reviewing the case law, the *Spellens* court expressly held that the same policy which prevents a spouse from denying the validity of a prior foreign divorce decree also prevents denial of the validity of the second marriage. (*Id.*, at p. 220.)

The court said the following: "It is not the marriage which is found valid . . . and thus the policy [against bigamous marriages] is not thwarted. Rather it is that defendant by reason of his conduct will not be permitted to question its validity or the divorce; so far as he is concerned, he and plaintiff are husband and wife." (*Id.*, at pp. 220-221.)

The court overruled past cases to the contrary.

The court held that because the husband could not deny the validity of the marriage, the wife was entitled to attorney fees, costs and support during trial, as if she had been validly married. (*Id.,* at p. 222.)

A distinction between the present case and *Spellens* is that in this case, Eve did not believe that her marriage ceremony to Ralph was valid, because she knew that she did not have a final divorce from her prior husband. (*Id.,* at p. 226.)

The question remains whether the doctrine of estoppel applies, nevertheless, to the present case, to prevent Ralph from denying the validity of this marriage.

As the court said in *Estate of Vargas, supra,* 36 Cal.App.3d at page 718, " 'Equity or chancery law has its origin in the necessity for exceptions to the application of rules of law in those cases where the law, by reason of its universality, would create injustice in the affairs of men.' [Citations.] Equity acts 'in order to meet the requirements of every case, and to satisfy the needs of progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed.' [Citation.] Equity need not wait upon precedent 'but will assert itself in those situations where right and justice would be defeated but for its intervention.' "

Thus, we need not confine the doctrine of estoppel to the precise facts found in the *Spellens* case. The present case cries out for application of that equitable doctrine.

The doctrine has been stated as follows: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.)

■ The elements of estoppel are representation or promise; made with knowledge of the facts; to a party ignorant of the truth; with the intent that the other party act on it; when the other party has, in fact been induced to rely on it. (See *Seymour* v. *Oelrichs* (1909) 156 Cal. 782, 795 [122 P. 847]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132.)

■ Estoppel applies to prevent a person from asserting a right where his conduct or silence makes it unconscionable for him to assert it. (See *Brown* v. *Brown* (1969) 274 Cal.App.2d 178, 188 [79 Cal.Rptr. 257].)

In this case, Ralph was properly estopped to deny that he was validly married to Eve. He went through a formal marriage ceremony with her, knowing that her divorce was not final, and continued to live with her as her husband for 15 years, during which time they had two children. Further, Ralph waited almost 15 years to attempt to assert the invalidity of his marriage to Eve.

The presumption of validity accorded to a ceremonial marriage by Evidence Code section 663 lends further support to Eve's position in this case.

Once there has been a formal marriage ceremony, the burden is on the party asserting its invalidity to prove that fact. (*Vargas* v. *Superior Court* (1970) 9 Cal.App.3d 470, 473-474 [88 Cal.Rptr. 281]; see Evid. Code, §§ 604-606.)

Because he was estopped to do so, Ralph could not meet the burden thus imposed upon him.

The present case is distinguishable on its facts from *Marvin* v. *Marvin, supra,* 18 Cal.3d 660, in which the parties never went through any kind of wedding ceremony. (*Id.,* at p. 666.) However, we believe that our holding in this case is consistent with the general policies expressed in that case.

The *Marvin* court made the following declaration regarding the resolution of disputes over the distribution of property acquired in a nonmarital relationship: "We conclude: (1) The provisions of the Family Law Act do not govern the distribution of property acquired during a nonmarital relationship; such a relationship remains subject solely to judicial decision. (2) The courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services. (3) In the absence of an express contract, the court should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case." (*Id.,* at p. 665.)

We believe that use of the doctrine of estoppel in this case, involving support and attorney fees, is consistent with the principles set forth in the statement above, given the facts with which we are presented.

Appellant's contention that a valid marriage must exist to support an award of support pendente lite under the statutes is not determinative, because we have found that Ralph is estopped to deny the validity of the marriage. No such estoppel was at issue in *Colbert* v. *Colbert* (1946) 28 Cal.2d 276, 279 [169 P.2d

633], cited by appellant, a case in which the marriage was established and the temporary support award affirmed.

## DISPOSITION

The order is affirmed.

Lui, Acting, P. J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1983.