Rolando T. RODRIGUEZ, Appellant,

v.

Julieta S. RODRIGUEZ, Appellee.

No. S–5706.

Supreme Court of Alaska.

Dec. 29, 1995.

Patrick W. Conheady and James E. Curtain, Olmstead & Conheady, Juneau, for Appellant.

Anthony M. Sholty, Faulkner, Banfield, Doogan & Holmes, Juneau, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal arises from a divorce action between Rolando and Julieta Rodriguez. On appeal, Rolando challenges a number of the superior court's pre-trial rulings. He also argues that when distinguishing marital from separate property, the superior court should have considered the effect of a period of separation that did not lead to divorce. Finally, he contends that the superior court should have valued the marital home as of the time of final separation, rather than as of the time of trial.

## I. FACTS AND PROCEEDINGS

Rolando married Julieta in the Philippines in November 1977. The couple had three children, all of whom were born before the marriage. Three months after the wedding, Rolando moved to the United States to seek employment, leaving Julieta and the children behind. Soon thereafter, the marital relationship became troubled, and Rolando ceased contact with Julieta in 1978. However, he continued to send money to the Philippines to support his children. He moved from California to Alaska in 1979.

Julieta moved to San Francisco in 1981. According to Rolando, he did not hear of her move until 1982, when he learned from medical authorities that she needed a gall bladder operation. He permitted them to charge the cost of the procedure to his insurance. Rolando states that he had no contact with Julieta until 1986. At that time he agreed to help her bring their children to the United States.

After the arrival of the children in May 1987, Rolando visited them and Julieta several times in San Francisco. During this time, Rolando and Julieta decided to reconcile, and she and the children moved to Rolando's home, in Juneau. The Rodriguezes bought a new home in July 1989. Rolando and Julieta stayed together until July 1991, when the couple once again separated. Julieta, and eventually the children, returned to California.

In August 1991 Rolando filed an action for a divorce from Julieta. After Julieta failed to plead or appear in the action, Rolando applied for and obtained an entry of default. Julieta filed an answer *pro se* on the same day that the court clerk entered the default. Consequently, the superior court set aside the default, but warned Julieta that "[f]rom this point forward, ... [she would] be required to comply with the Alaska Civil Rules." The court also recommended that she hire counsel, which Julieta subsequently did.

In mid-May 1992—one and one-half months after the deadline for amending complaints and two months and ten days before the original trial date—Rolando moved to amend his complaint to allege that his marriage to Julieta was void under Alaska law.[1] Rolando asserted that Julieta had previously been married to another man in

---

1. According to Julieta, the superior court's pretrial scheduling order set a trial date of July 27, 1992, and a deadline of March 31, 1992, for motions to amend the pleadings. The trial date was subsequently moved back to October 26, 1992. In September, Rolando filed a renewed motion to amend the pleadings, on the same grounds as before. The superior court denied this motion as well.

the Philippines, and that because Philippine law recognized separation only, not divorce, any subsequent marriage by Julieta would be bigamous. The superior court denied Rolando's motion on the grounds that the trial would be delayed, that litigation would be more complex and costly, and that the prejudice to Julieta would be too great.

The divorce proceeding took place in November and December of 1992. In April 1993 the superior court issued written findings and orders. In its orders, the superior court rejected Rolando's characterization of property acquired during the 1978–1988 separation as non-marital. Additionally, applying *Doyle v. Doyle*, 815 P.2d 366 (Alaska 1991), the superior court valued the Rodriguez home at the time of trial, but allowed Rolando credit for mortgage payments made between the date of the parties' final separation and the date of trial.

Julieta filed a motion for reconsideration, arguing that the superior court had mistakenly concluded that it was required to give credit for post-separation mortgage payments. She cited *Ramsey v. Ramsey*, 834 P.2d 807 (Alaska 1992), where we clarified that *Doyle* does not require such a credit, but rather only requires that the trial court consider that such post-separation payments were made when dividing the property. In July 1993 the superior court decided on reconsideration to deny Rolando credit for post-separation mortgage payments. The superior court then issued its final decree of divorce. Rolando now appeals.

## II. DISCUSSION

### A. Setting Aside the Default Judgment

 Rolando contends that the superior court erred when it set aside its entry of default because this decision resulted in "unforeseen" prejudice to him. Between the setting aside of the default and the final divorce decree, we issued our opinion in

*Ramsey*. In *Ramsey* we held that when dividing a marital estate, the trial court is not required to give credit to a spouse who made payments from post-separation income to maintain marital property. *Id.* at 809. As a result, Rolando claims he was prejudiced because the superior court relied on this precedent when denying him credit for post-separation mortgage payments on the marital home.

 At the time the superior court entered the default judgment, Julieta was acting *pro se*. Where, as here, the litigant is unversed in the rules of civil procedure, the litigant's failure to comply with the rules is not a result of bad faith or gross neglect, and the infraction is relatively minor, it is not an abuse of discretion for the trial court to set aside the default judgment. *See Kennedy v. First Nat'l Bank of Fairbanks*, 637 P.2d 297, 298 (Alaska 1981); *Sanuita v. Hedberg*, 404 P.2d 647 (Alaska 1965). This holding is consistent with the mandate, stated in Alaska Civil Rule 94, that the Rules of Civil Procedure "may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."

 Rolando is correct in arguing that the superior court should consider any resulting prejudice to the plaintiff when deciding whether to set aside an entry of default. *Hertz v. Berzanske*, 704 P.2d 767, 771 (Alaska 1985). However, our review must necessarily be based on the reasonably foreseeable consequences at the time of the superior court's ruling. Because the superior court could neither foresee nor weigh the prejudice that might arise from future changes in the law, we conclude that such changes may not be used to establish prejudice on appeal. We therefore hold that it was not an abuse of discretion for the trial court to set aside the default judgment.[2]

---

**2.** We also reject Rolando's argument that because the trial court set aside the default judgment it should have applied pre-*Ramsey* law. "Absent special circumstances, a new decision of this court will be given effect in the case immediately before the court, and will be binding in all subsequent cases in which the point in question is properly raised, regardless of the fact that the

events to which the law is applied occurred prior to the actual decision of the Court." *Plumley v. Hale*, 594 P.2d 497, 502 (Alaska 1979). This rule applies even where the subsequent case is currently pending in superior court. Because Rolando fails to identify any reason which would justify purely prospective application of the rule adopted in *Ramsey*, we conclude that the superi-

## B. *The Motion to Amend the Complaint*

■ Rolando's next argument on appeal is that the superior court erred in denying him leave to amend his pleadings to allege that his marriage to Julieta was void. Rolando contends that "[s]ince the issue concerns subject matter jurisdiction, Civil Rule 12(h)(3) allows [him] to raise this issue at anytime."[3] The superior court denied the motion because it was filed after the pretrial deadline for amendments to the pleadings. The court also noted that if amendment was allowed, the trial might be delayed and would be much more complex and costly, and therefore that the prejudice to Julieta would be great.

■ Under Alaska Civil Rule 15(a), once a responsive pleading has been served, parties may amend their pleadings "only by leave of court or by written consent of the adverse party...." Generally, the superior court is given broad discretion to allow or deny an amendment of the pleadings. *Betz v. Chena Hot Springs Group*, 742 P.2d 1346, 1348 (Alaska 1987). However, because "a court which does not have subject matter jurisdiction is without power to decide a case, this issue cannot be waived, and can be raised at any point during the litigation." *Wanamaker v. Scott*, 788 P.2d 712, 713–14 n. 2 (Alaska 1990). Therefore, where a proposed amendment challenges the trial court's subject matter jurisdiction, it is an abuse of discretion to deny the party's amendment. Noting that numerous courts in our sister states have held that they lack jurisdiction over dissolution proceedings and cannot grant relief predicated on the spousal relationship if a marriage is found to be void,[4] we address the question of whether the superior court properly exercised jurisdiction in the present action.

■ "The question of a court's jurisdiction goes to its power to hear and adjudicate the subject matter in a given case." *Matter of C.D.M.*, 627 P.2d 607, 610 (Alaska 1981). Article IV, section 1 of the Alaska Constitution states, "The jurisdiction of courts shall be prescribed by law." Thus, where the legislature specifically authorizes the court to enter a judgment in a particular class of cases, the court properly has subject matter jurisdiction.

Whether this action is treated as an action for divorce under AS 25.24.050 or an action to declare the marriage void under AS 25.24.020, we conclude that the superior court had jurisdiction to divide the couple's property. Alaska Statute 25.24.160(a) states in part,

> In a judgment in an action for divorce *or action declaring a marriage void* or at any time after judgment, the court may provide ... (4) for the division between the parties of their property, including retirement benefits, whether joint or separate, acquired only during marriage, in a just manner and without regard to which of the parties is in fault....

(Emphasis added.) By including the phrase "or action declaring a marriage void," the legislature must have intended to allow the division of property acquired during a putative marriage which is found to be void because it was "contracted by a person during the life of a former husband or wife which marriage has not been annulled or dissolved." AS 25.24.020. Thus, we conclude that the superior court properly exercised jurisdiction to divide the parties' property and that any error in failing to grant Rolando's motion for leave to amend his pleadings to raise lack of subject matter jurisdiction was harmless error.

## C. *The Determination of Marital Property*

■ Rolando next challenges the superior court's determination that certain property which he acquired from 1978 to 1988, when the couple lived apart, was part of the

---

or court properly applied our holding in *Ramsey* to the present case.

**3.** Alaska Civil Rule 12(h)(3) provides, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter the court shall dismiss the action."

**4.** *See, e.g., Ex parte Cook,* 42 Cal.App.2d 1, 108 P.2d 46, 47 (1940); *In re Marriage of Zubia,* 38 Colo.App. 471, 558 P.2d 1003, 1004 (1976); *Williams v. Williams,* 460 N.E.2d 1226, 1228 (Ind.App.1984).

marital estate.[5] He cites *Schanck v. Schanck*, 717 P.2d 1 (Alaska 1986), and several other cases for the proposition that the only assets subject to division are those acquired during periods in which the marriage was a joint economic enterprise.

In making this argument, Rolando mischaracterizes Alaska law. The cases on which he relies require a determination on the existence of a joint economic enterprise, but only with regard to distribution of property acquired "with income earned after a *final* separation that is intended to, and does in fact, lead to a divorce. . . ." *Id.* at 3 (emphasis added); *accord Ramsey*, 834 P.2d at 809; *Bays v. Bays*, 807 P.2d 482, 486 (Alaska 1991); *Dixon v. Dixon*, 747 P.2d 1169, 1174 (Alaska 1987). These cases are inapposite here, because Rolando and Julieta reconciled after their informal separation, without ever filing for divorce, and lived together as husband and wife for a full three years after the separation.

 The superior court properly applied the first step of a property division analysis by identifying what specific property was available for distribution. *Wanberg v. Wanberg*, 664 P.2d 568, 570–71 (Alaska 1983). We have previously held that pursuant to AS 25.24.160(a)(4), "[p]roperty available for distribution includes *all property acquired during marriage*, whether title is joint or separate." *Lewis v. Lewis*, 785 P.2d 550, 555 (Alaska 1990) (emphasis added). We further note that AS 25.24.160(a)(4) provides that the trial court should ensure that there are sufficient assets available to "fairly allocate the economic effect" of the divorce. Because the property at issue was obtained "during marriage" and the parties subsequently reconciled, we conclude that the superior court did not abuse its discretion in declining to apply the post-separation analysis for the period from 1978 to 1988.

## D. *Valuation Date of the Marital Home*

 Finally, Rolando contends that the superior court erred in valuing the marital home as of November 1992, the date of trial, rather than as of July 1991, the date when he and Julieta separated.[6] Between these two dates, the home appreciated in value significantly.[7] Rolando contends that because he made the mortgage payments during that time, his efforts alone caused the property to increase in value.

 Though generally the proper date by which to value property is the date of trial, under special circumstances the superior court may value the property as of the date of separation. *Ogard v. Ogard*, 808 P.2d 815, 819–20 (Alaska 1991). One instance where valuing property from the date of separation may be warranted arises when the efforts of only one of the spouses leads to an increase in the value of the marital property. *Id.*

 Post-separation mortgage payments simply cannot be considered "sole efforts" for any fortuitous increase in the home's value that occurs during the interim period before trial. *Ogard*'s "special circumstances" exception applies, for instance, to pension benefits accumulated after separation, because the additional assets would not have existed had not one spouse, and that spouse alone, earned them in the course of his or her employment. *See, e.g., Hunt v. Hunt*, 698 P.2d 1168, 1172 (Alaska 1985) (holding it was not an abuse of discretion in that case to apply the "special circumstance" exceptions to these pension benefits). By contrast, Rolando's post-separation payments may have allowed the parties to keep the home, but the value of the property would have increased whether or not Rolando made the payments. Therefore, we conclude that

---

**5.** The dispute appears to focus upon Rolando's SBS benefits, which were worth $73,937 at the time of trial and $65,150.55 in July 1991, the date of the parties' final separation. Of this amount, $29,291.98 accrued during the period when Rolando and Julieta had reconciled, from July 1988 to July 1991.

**6.** Because valuation of property involves factual questions, this court reviews the superior court's

valuation of property for clear error. *Thomas v. Thomas*, 815 P.2d 374, 375 (Alaska 1991).

**7.** The parties purchased the house in July 1989 for $89,900. The value of the home was appraised at $85,000 in July 1991, when the parties separated, and $89,000 in December 1992, the time of trial.

the post-separation payment of the mortgage on the marital home by Rolando does not constitute a special circumstance warranting valuation at the time of separation.

▮ Nonetheless, under some circumstances a spouse may be entitled to reimbursement of payments made out of post-separation earnings to maintain marital property. *See Wood v. Collins,* 812 P.2d 951, 958 (Alaska 1991). In the present case the superior court determined that Rolando was not entitled to reimbursement because he had lived in the house after the parties separated and thus a credit would constitute an unfair advantage to Rolando. In other words, any benefit which he may have imparted to the marital estate was offset by the benefit he received from the estate by living rent-free.

We conclude that the superior court did not err in applying such reasoning. We held in *Wood* that where the use of marital property after separation effectively excludes the other spouse, the rules of cotenancy require payment to the marital estate of the fair market rental value for use of the property. *Id.* This reasoning is also consistent with our statement in *Ramsey,* 834 P.2d at 809:

> We have required that trial courts consider payments made to maintain marital property from post-separation income when dividing marital property. *Doyle v. Doyle,* 815 P.2d 366, 369 n. 5 (Alaska 1991). We have not, however, held that the spouse who makes such payments must necessarily be given credit for them in the final property division.

Thus, we hold that the superior court did not abuse its discretion in ruling that Rolando was not entitled to a credit for any post-separation payments he made on the parties' home.

## III. *CONCLUSION*

Based on the foregoing, we AFFIRM the superior court in all respects.