**Michael D. BATEY, Appellant,**

v.

**Earline M. BATEY, Appellee.**

**No. S–7143.**

Supreme Court of Alaska.

March 7, 1997.

---

David A. Golter, Tull & Associates, Palmer, for Appellant.

Allison E. Mendel, Mendel & Huntington, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

Michael Batey appeals the superior court's property division, alimony award, and attorney's fees award. We reverse.

### II. FACTS AND PROCEEDINGS

Michael Batey and Peggy Lampley were married in Alaska in March 1967. They separated in the fall of 1969. In February 1971 Michael and Earline Batey participated in a marriage ceremony in Nevada. Michael and Peggy were divorced in September 1971.

The superior court found that at the time of Earline's marriage to Michael, Earline "was aware that [Michael] was still married and knew that the ceremony was invalid." The court further found that after Michael's divorce from Peggy, Earline "became convinced that the marriage was now valid." Eventually, both Michael and Earline "came to believe that they were in fact married."

Michael and Earline held themselves out as husband and wife for over twenty years. Throughout that period they filed joint federal tax returns, and Michael named Earline as his spouse with his health care provider. In 1977, after the birth of their only child, Earline expressed a desire to remarry, but they never did so.

In September 1993 Michael filed for divorce. In January 1994 Michael amended his complaint to allege that the marriage was void. The amended complaint sought only custody, child support, and a partition of the residence. Earline counterclaimed for child custody and support.

The superior court bifurcated the trial, considering first the issue of the validity of the marriage. The court concluded that the parties' marriage was void, but that "there exists a valid putative marriage between the parties entitling [Earline] to a decree of divorce, equitable division of the parties' property, and spousal support." The superior court proceeded to hear and decide issues of custody, support, and property division.

Michael appeals.

### III. DISCUSSION

Earline does not dispute that her marriage to Michael was void. See AS 25.05.021(1) ("Marriage is prohibited and void if performed when [ ] either party to the proposed marriage has a husband or wife living. . . ."). Instead, she argues the superior court properly found a "putative marriage." We have recently held that the superior court has the power to divide property acquired during a putative marriage which is found to be void. See Rodriguez v. Rodriguez, 908 P.2d 1007, 1011 (Alaska 1995).[1] In the present case we

---

1. Earline relies on Rodriguez to argue that the superior court has the power to divide property and award alimony whether or not the parties are married. In Rodriguez we held that "[b]y including the phrase 'or action declaring a marriage void,' [in AS 25.24.160(a) ] the legislature

must decide for the first time what constitutes a putative marriage. This is a question of law to which we apply our independent judgment. *See Burcina v. City of Ketchikan,* 902 P.2d 817, 820 n. 4 (Alaska 1995).

■ The putative marriage doctrine has been codified in Alaska at AS 25.05.051, which provides in part:

> If, during the lifetime of a husband or wife with whom a marriage is still in force, a person remarries and the parties to the subsequent marriage live together as husband and wife, and one of the parties to the subsequent marriage believes in good faith that the former husband or wife is dead or that the former marriage has been annulled or dissolved by a divorce or is without knowledge of the former marriage, then after the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, they are legally married from the time of removal of the impediment....

The essential basis of a putative marriage is a good faith belief by at least one of the parties in the validity of the marriage. *Id.* In finding that a putative marriage existed, the superior court assumed the requisite good faith could develop over time, in this case sometime after Michael was divorced from Peggy. But we read AS 25.05.051 to require good faith to exist at the time of the putative marriage.

■ Our interpretation of AS 25.05.051 is based first on the language of the statute itself. *See Borg–Warner Corp. v. Avco Corp.,* 850 P.2d 628, 633 n. 12 (Alaska 1993) ("Statutory construction begins with an analysis of the language of the statute construed in view of its purpose."). The statute provides that if a good faith belief in the validity of a marriage is present, then after the impediment to the marriage's validity is removed the parties will be considered legally married as long as they "*continue* to live together as husband and wife in good faith on the part of one of them...." AS 25.05.051 (emphasis added). The clear implication is that good faith must be present at all times, and must at the very least precede the removal of the impediment.

■ The purpose of AS 25.05.051 is to provide relief to an innocent spouse who enters into a marriage without knowledge of its invalidity. Allowing a person who knowingly enters into a bigamous marriage to claim later he or she eventually developed a good faith belief in the validity of that marriage would vitiate this purpose.[2] The better rule, in light of reason and policy, is to require good faith at the inception of the putative marriage. *See M.R.S. v. State,* 897 P.2d 63, 66 (Alaska 1995) ("In interpreting a statute or rule, this court will adopt 'the rule of law which is most persuasive in light of precedent, reason and policy.'") (quoting *Hernandez–Robaina v. State,* 849 P.2d 783, 785 n. 2 (Alaska 1993)). Since Earline lacked a good faith belief in the validity of the marriage at its inception,[3] she cannot take advantage of the protections afforded a puta-

---

must have intended to allow the division of property acquired during a putative marriage which is found to be void...." *Rodriguez,* 908 P.2d at 1011. Thus, where a marriage is void, the superior court may divide property and award alimony under AS 25.24.160(a) only if the requirements of the putative marriage statute, AS 25.05.051, *see infra,* are satisfied.

**2.** The dissent's proposed application of the doctrine of quasi-estoppel also would run counter to the purpose of AS 25.05.051, for it would permit a person who knowingly enters into a bigamous marriage to obtain the protections reserved for putative spouses. Though not universally so, putative marriage cases often involve parties who have lived together and "held themselves out to the public" as married. We decline to permit a

person to evade the "good faith" requirement simply by basing his or her claim on a theory of quasi-estoppel rather than on the existence of a putative marriage.

**3.** Earline objects to the superior court's finding, over conflicting testimony, that she knew Michael was still married when she married him. This finding is not clearly erroneous and therefore will not be disturbed. *See Wright v. Wright,* 904 P.2d 403, 405 n. 1 (Alaska 1995) ("This court will set aside a superior court's factual determination only upon a finding of clear error."); *Parker v. Northern Mixing Co.,* 756 P.2d 881, 892 (Alaska 1988) ("It is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.").

tive spouse in AS 25.05.051.[4]

Earline argues AS 25.05.051 does not limit this court's ability to create its own putative marriage doctrine. However, the legislature's intent in enacting the marriage code, which includes AS 25.05.051, was "to provide a *comprehensive* marriage code for the state of Alaska." Preamble, ch. 58, SLA 1963 (emphasis added). A common law definition of putative marriage which expands or alters the definition found in AS 25.05.051 would run counter to the expressly stated legislative intent.

## IV. *CONCLUSION*

The superior court erred in finding a putative marriage. The court's property division, alimony award, and attorney's fees award, all of which flowed from the putative marriage finding, must therefore be reversed. *See Rosson v. Rosson*, 635 P.2d 469, 470 n. 4 (Alaska 1981) ("[P]arties who enter into a relationship that is neither a lawful marriage nor a bona fide putative marriage must be treated as unmarried. . . ."). We leave it in the first instance to the superior court on remand to determine the appropriate relief.

REVERSED and REMANDED.

FABE, Justice, with whom RABINOWITZ, Justice, joins, dissenting.

I dissent from the opinion of the court because it is my view that Michael should be estopped from denying the validity of his marriage to Earline.

Michael and Earline lived together as husband and wife for over twenty years. They obtained a marriage license and participated in a formal marriage ceremony. They had a son and raised him together. Throughout the 1970s and 1980s they filed joint federal tax returns. Michael named Earline as his spouse with his health care insurer. When asked if he thought he was married, Michael testified: "I'm not sure how to answer that, your Honor. . . . I guess at the back of my mind, I've always known that we weren't, but yes, I have played and gone through life and acted with Earline as if she was my wife." In fact, Michael never questioned the validity of the marriage until after he had filed an action for divorce,[1] and it became financially advantageous for him to do so. Basic notions of equity, fairness, and justice require that he be estopped from denying the validity of the marriage in an attempt to avoid sharing what would be marital assets or paying otherwise appropriate spousal support.

I agree with the court that Michael and Earline's marriage was not a putative marriage under the definition of AS 25.05.051 because both Michael and Earline knew that their marriage was not valid at the time of their wedding ceremony. This fact, however, does not preclude application of the doctrine of quasi-estoppel.

Quasi-estoppel "precludes a party from taking a position inconsistent with one he [or she] has previously taken where circumstances render assertion of the second position unconscionable." *Jamison v. Consolidated Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978). Quasi-estoppel does not require the injured party to have relied on the estopped party's conduct or statements, nor does it require the injured party to be ignorant of the truth. *Id.* at 102. In determining if quasi-estoppel applies, the court considers "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first

---

**4.** Other courts interpreting similar statutes have reached the same conclusion we reach today. *See, e.g., Succession of Pigg*, 228 La. 799, 84 So.2d 196, 197 (1955) (requiring good faith belief in validity of marriage at the time of its inception); *Spearman v. Spearman*, 482 F.2d 1203, 1206 (5th Cir.1973) ("A putative spouse is one whose marriage is legally invalid but who has engaged in (1) a marriage ceremony or a solemnization, on the (2) good faith belief in the validity of the marriage."); *see also* 52 Am.Jur.2d *Marriage* § 114 (1970) ("The term 'good faith,' when used in connection with putative marriage, means an honest and reasonable belief that the marriage was valid at its inception. . . ."). The superior court acknowledged "[t]here really aren't any cases suggesting . . . if you later on during the marriage believe somehow it's been ratified that . . . you're in the same position as the putative spouse who believed she was married at the time of entering into the marriage."

**1.** His complaint averred that he and Earline were married in February 1971 "and ever since that date have been and are now husband and wife."

position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and whether the first assertion was based on full knowledge of the facts." *Id.*

The California Court of Appeal has applied estoppel in a case similar to this one. In *In re Marriage of Recknor,* 138 Cal.App.3d 539, 187 Cal.Rptr. 887, 892 (1982), the Recknors participated in a formal marriage ceremony knowing that Eve Recknor's divorce from her first husband was not final and that their marriage was void. The Recknors' marriage did not meet the statutory definition of a putative marriage because neither party possessed a good faith belief in the marriage's validity. *Id.* 187 Cal.Rptr. at 890. However, the trial court ordered Ralph Recknor to pay Eve spousal support pendente lite and attorney's fees, citing previous support cases estopping a party from denying the validity of a marriage. *Id.*

In affirming the trial court's decision, the California Court of Appeal held that "the award may be upheld on the independent, equitable ground of estoppel." *Id.* at 891. The Court reasoned:

> In this case, Ralph was properly estopped to deny that he was validly married to Eve. He went through a formal marriage ceremony with her, knowing that her divorce was not final, and continued to live with her as her husband for 15 years, during which time they had two children. Further, Ralph waited almost 15 years to attempt to assert the invalidity of his marriage to Eve.

*Id.* at 892.

Following the reasoning of the *Recknor* court, the doctrine of quasi-estoppel provides the appropriate remedy in this case. After Michael has reaped the benefits of holding himself out as married to Earline for more than twenty years, it is unconscionable for him to assert now that his marriage to her is void. The majority's resolution of this case penalizes Earline for the seven-month period in which Michael's divorce was not yet final and ignores the more than twenty years during which they held themselves out as husband and wife. Equity requires that Michael be estopped from denying the existence of his marriage to Earline simply because it benefits him financially to do so.

Estopping Michael from denying the validity of his marriage to Earline does not validate a marriage which AS 25.05.021 and 25.05.051 render void. Nor does estoppel contravene the strong public policy expressed by our marriage statute. There is a difference between declaring a marriage void and preventing a party from asserting its invalidity. It would be inimical to our law supporting committed family relationships to allow Michael Batey to now avoid his marital obligations.

I would therefore affirm the trial court's division of property and award of spousal support.